Margaret Stroyeck, Plaintiff-Appellant and Cross Appellee, v. A. E. Staley Manufacturing Company, a Corporation, Defendant-Appellee and Cross Appellant.

Gen. No. 10,283.

Third District.

May 18, 1960.

Garman and Owen, of Decatur, for appellant.

Earl S. Hodges and Samuel C. Patton, of Springfield, for appellee.

ROETH, JUSTICE.

Plaintiff recovered a judgment for $100 for personal injuries claimed to have been sustained in a fall on defendant's premises as a result of defendant's alleged

negligence. The alleged negligence of defendant as charged in the complaint consisted of maintaining a sidewalk in an unsafe condition, in allowing ice to accumulate on the sidewalk, in not removing the ice, in failing to provide adequate lighting over the sidewalk, in failing to provide any warning of the slippery condition, although it knew or should have known of the condition. Plaintiff filed a post trial motion for a new trial as to the question of damages only, or in the alternative for a new trial generally. Defendant filed a post trial motion for judgment notwithstanding the verdict. Both motions were denied. Plaintiff has appealed and defendant has cross appealed. Since defendant's cross appeal is limited to the proposition that no actionable negligence is shown by the record and since a consideration of this contention requires a detailed analysis of the evidence, we consider defendant's cross appeal first.

■ ■ Certain fundamental rules govern our determination of the question thus presented. We are precluded from weighing the evidence or undertaking to reconcile any conflict in the evidence. We must consider all the evidence in the aspect most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom. If, when so considered, there is any evidence, standing alone and considered to be true, together with the inferences that may legitimately be drawn therefrom, which fairly tends to support the jury verdict, the entry of judgment notwithstanding the verdict is properly denied. We are therefore required to examine the evidence keeping in mind the foregoing rules. We consider the testimony only in its aspect most favorable to plaintiff.

On the date of the occurrence in question, towit, January 15, 1957, plaintiff was employed as a pie maker by Swartz Restaurant, Inc. This concern

operated two cafeterias at defendant's plant in Decatur for the benefit of defendant's employees and personnel. Defendant's plant covers a large area of ground and within the area there are parking lots. Shortly before 5:00 a. m. on the morning in question, plaintiff drove her car into one of the designated parking lots and proceeded on foot on her way to work. She crossed a roadway within defendant's plant grounds to a sidewalk. This sidewalk extends in a north and south direction and plaintiff proceeded north on the sidewalk. The sidewalk is on the east side of the roadway which plaintiff crossed and adjacent to the sidewalk on the east is another parking area. According to plats in evidence, the sidewalk is crossed by a double spur track at a point approximately 70 feet to 75 feet north of where the sidewalk commences. As one walks north from the point where the sidewalk commences, there is a very slight downward slope of the sidewalk to the north until one reaches a point 13 feet 6 inches from the center of the spur tracks. From this point for a distance of 8 feet the slope downward to the north is 13.6%.

The evidence shows that on the morning in question when plaintiff left home and when she arrived at the parking lot, the weather was cold and it was still dark. So far as the temperature is concerned, it was stipulated that on the day in question it was below freezing and had been for some time prior thereto. As she traversed the city streets of Decatur there was no snow or ice on the streets. As she proceeded over the company grounds and upon alighting from her car there was no snow or ice on the ground. As she crossed the roadway and proceeded on the sidewalk to the point where the abrupt change of grade of the sidewalk commences, there was no snow or ice on the ground. As she started down the abrupt change

of grade of the sidewalk, she slipped and fell forward. Upon falling to the ground she could feel and ascertain that she had slipped on ice. The area in the vicinity of the parking lot and in the vicinity of where plaintiff fell was unlighted and it was dark. Because of the darkness she could not see the ice until after she fell and was on her hands and left knee on the sidewalk. The evidence further shows that while plaintiff had traversed this same sidewalk many times and was aware of the abrupt slope at the point where she fell, on prior occasions when there was snow on the ground she walked on the roadway instead of the sidewalk, which the evidence shows does not have the abrupt slope of the sidewalk but is constructed on a 4.6% grade. After getting up, plaintiff proceeded to the plant cafeteria. She told her coworkers that she had fallen on the ice on the slope. She assembled her utensils and waited for the plant nurse. She found the plant nurse eating breakfast in the cafeteria, explained what had happened and was directed to first aid by the plant nurse. There the plant nurse rendered first aid by putting an elastic bandage on the knee.

The sidewalk in question had been constructed in the latter part of 1955 or early part of 1956. It had a brushed broom finish on top. From the testimony of an expert architect and structural engineer it appears that the maximum safety grade of a sidewalk, in good engineering practice, is a 15% grade; that constructions beyond an 11.6% or a 12% grade are rarely used; that in a 4.5% or 5% grade the slope is hardly noticeable and that beyond these percentages the danger from snow, ice and mud increases rapidly. It also appears that the sidewalk in question could have been constructed with a 4.6% grade instead of a 13.6% grade if the grade of the roadway had been followed;

81

that defendant maintains a civil engineering department at its plant and employs engineers and draftsmen; that in February, 1956, at the request of one of its engineers, a draftsman prepared a set of plans contemplating the reduction of the grade in the sidewalk where plaintiff fell but that the project was abandoned. It further appears that some 1700 people pass over this sidewalk each working day. For the most part, the foregoing testimony is undisputed. Wherever there might be said to be a conflict, we have detailed the evidence in the light most favorable to plaintiff.

██ ██ Thus on the negligence question we have a situation where the defendant has constructed and is maintaining a sidewalk being used by some 1700 employees daily. Since it maintains an engineering department in connection with its plant operation it is chargeable with knowledge that a 13.6% grade in a sidewalk, while within the maximum limits of a safety grade, presents a hazardous condition during seasonal changes which occur in this climate. It is a fair inference from this record that a lesser grade was practical and had been considered by defendant prior to the occurrence in question. To these factors there must be added the factor of lighting. It is undisputed that it was dark when plaintiff fell, and that there was no lighting at all in the immediate area. It is a fair inference that the darkness was so pronounced that plaintiff could not discern the icy condition of the walk until she felt it with her hands after falling. Consequently, the question of whether the construction and maintenance of the walk under the circumstances thus shown was negligence, and the question of whether, knowing of the hazard that might well be created by seasonal conditions, it was negligence to fail to provide lighting facilities by which seasonal

82

conditions creating the extra hazard might be readily observed, were fact questions for the jury.

Counsel for defendant cite a long line of cases which hold that an owner of premises is not liable for injuries sustained as a result of a fall on a sidewalk rendered slippery from ice and snow resulting from natural causes and general in the neighborhood. Throughout their brief they make the assertion that the ice on the sidewalk was the result of natural causes. We have searched the record carefully and find nothing that would lead to this conclusion either by way of direct testimony or by reasonable inference. The cause of the ice at the place where plaintiff fell is a mystery. Nor does the record bear out counsel's contention that the icy condition was general in the neighborhood. Plaintiff traversed some 8 or 9 blocks of city streets from her home to the plant, drove through the plant grounds and then proceeded on foot. She testified positively that there was no ice on the ground in all of this distance. There is no evidence to the contrary and in fact no evidence of any ice in any part of Decatur on the day in question. The case before us lacks the essential elements above noted, for application of the general rule and the cases cited have no application.

Counsel for defendant next contend that an owner is not liable for injury resulting from ice or a slippery condition of a sidewalk created by natural causes, concurring with a slope or incline of the sidewalk and relies principally upon Calhoun v. Corning, 328 Ill. App. 493, 66 N.E.2d 303; Owens v. Chicago, 162 Ill. App. 196, and Powers v. City of East St. Louis, 161 Ill. App. 163. Different factual situations are present in each of these cases. Aside from this, it appears from a reading of these cases that in each case there was no evidence that the walk as constructed, was

hazardous when covered with ice, snow or mud. In the case at bar, as we have heretofore pointed out, this element affirmatively appears.

■ Counsel contend that the incline or slope in the sidewalk merely furnished a condition and was not the proximate cause of plaintiff's injury. With this contention we do not agree. Here we have a concurrence of factors producing an injury, towit, the construction of a sidewalk with a slope known to be hazardous when icy, the presence of ice on that sidewalk and a failure to adequately light the area so that the icy condition can be seen. These three factors may be considered together by the jury in determining the proximate cause of plaintiff's injury.

■ Finally it is contended that defendant had no knowledge of the icy condition. It knew that the walk was hazardous when icy. It stipulated that the temperature was below freezing on the day in question and had been for some time prior thereto. It knew that the area was not lighted. Actual knowledge of the ice is not necessary. Knowledge is implied if from the surrounding circumstances it can be reasonably said that the defendant could have, in the exercise of due care, learned of or ascertained the condition. This is primarily a jury question under the record before us.

We are convinced that the trial court did not err in denying defendant's post trial motion for judgment notwithstanding the verdict.

We now pass on to plaintiff's contention that her motion for new trial should have been granted. This question involves consideration of the nature and extent of plaintiff's injuries. It is conceded that plaintiff was afflicted with arthritis in her left knee prior to January 15, 1957. This condition had not given the plaintiff any trouble and she had not experienced any pain or disability as a result thereof. In October,

1956, she was off work from 4 days to a week as a result of a strained ligament in her left knee. Aside from this incident she had worked regularly prior to January 15, 1957, without pain in her knee. After falling on the walk and at the time first aid was rendered plaintiff noticed that her knee was red and swollen. The knee continued to pain her all the time during the winter and spring of 1957. Eventually she saw her family physician who prescribed a pain pill to relieve the pain. At the time of the injury she was working 48 hours per week and subsequently went on a 40 hour per week schedule. She stopped working in April, 1958, because her knee pained all the time. On two occasions since the occurrence her left knee has given way and she has fallen on each occasion. She still complained of pain in her left knee at the time of trial. After seeing her family doctor she consulted a Dr. Hoffman at the Decatur Clinic, who sent her to the hospital for therapy treatments. In December, 1957, she was examined by Dr. Sterling Parker, an orthopedic surgeon. He conducted a thorough examination of her left leg and knee and took x-ray pictures of the same. He found an excess amount of fluid on the left knee, definite changes of the patella, softening of cartilage under the patella, crepitation on movement and limitation of motion. The x-rays disclosed a moderately severe narrowing of the medial aspects of the knee joint with moderate lipping and spurring at the superior pole of the patella. Dr. Parker diagnosed the condition of the left knee as moderately severe hypertrophic arthritis associated with conglutination of the patella. He discussed and recommended removal of the patella to alleviate the conditions. In response to a hypothetical question Dr. Parker testified that in his opinion the fall might or could have aggravated the arthritic condition. Although the record shows that plaintiff was examined

by a doctor of defendant's selection, this doctor did not testify and the jury did not have the benefit of his findings.

Plaintiff incurred medical expenses in the total amount of $132.50, as to which there is no dispute. The cost of an operation to remove the patella would be $200 not including the cost of hospitalization or post operative care.

The law applicable to the question thus present is succinctly stated in I. L. P. Damages, Sec. 162, as follows:

> "The courts are reluctant to interfere with the discretion of the jury as to the amount of damages to be awarded, and ordinarily will not overturn the jury's finding for inadequacy of its award unless the award is palpably inadequate or against the manifest weight of the evidence. . . .
>
> "However, an award cannot be upheld where serious injuries are sustained and a small or a nominal amount is awarded, especially where the injuries are permanent; *or where the plaintiff has been injured and has also incurred expenses as a result of the injuries, and an award is made for less than the amount of the expenses."* (Emphasis supplied)

In Avrams v. Fuller, 325 Ill. App. 694, 60 N.E.2d 644, a verdict of $1500 was held to be inadequate where the proven out of pocket expenses were $1572.25. In the same case, as to another plaintiff, it was held that a verdict of $100 was inadequate where the proven out of pocket expenses were $360. In Hong v. Williams, 6 Ill.App.2d 456, 128 N.E.2d 655, it was held that a verdict for $1000 was obviously inadequate where proven out of pocket expenses were $1350. Like-

wise in Browder v. Beckman, 275 Ill. App. 193, where the verdict was only for the sum total of medical bills.

 The jury found the liability question against the defendant. As heretofore indicated, we are of the opinion that this action on the part of the jury was fully warranted under the evidence before it. Having thus resolved the liability question, it was the duty of the jury to determine the amount of damages in accordance with the elements set out in the court's instructions. It is apparent that the jury failed to take into consideration proper elements of damage which were clearly proven. Accordingly a new trial should be granted to plaintiff as to the question of damages only.

The judgment of the Circuit Court of Macon County will be reversed and the cause remanded for new trial as to damages only.

Reversed and remanded.

REYNOLDS, P. J. and CARROLL, J., concur.