Frank J. McGourty, Plaintiff-Appellee, v. Mike Chiapetti, Defendant-Appellant.

Gen. No. 48,523.

First District, Third Division.
November 7, 1962.

168

Brody and Gore, of Chicago (Charles D. Snewind, of counsel), for appellant.

Coghlan, Coghlan and Joyce, of Chicago (John P. Coghlan and Thomas J. Joyce, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant appeals from a judgment on a verdict for personal injuries sustained by plaintiff while he was leaving defendant's place of business. The principal issues are whether plaintiff was an invitee while on the particular premises on which he was injured and whether the defective condition was a latent or patent one. Errors are charged, among which is one involving the use of an unverified answer for impeachment.

Defendant was a meat packer and plaintiff was a wholesale dealer in meats. Defendant's place of business was at 3810 South Halsted Street, Chicago. The

north 75 feet of the property was improved with a 2-story office and packing house, running flush along the west edge of Halsted Street. The entrance to the building from the street proper was in the wall facing Halsted Street. The 25 feet immediately to the south of the building was occupied by a loading area where defendant's customers could drive in their trucks, load their merchandise and drive away. The loading area consisted of a platform or loading dock, over which there was a roof, and a parking area with a concrete floor. The platform of the dock was 2½ to 3 feet above the floor. To the south defendant had in 1952 built what was called a "restraining wall," which he says was intended to prevent damage to the adjoining building. The restraining wall or ledge tapered from "almost nothing" at the west end where the drive enters Halsted Street to a height of approximately 2½ feet where it meets the dock. It is about 6 to 8 inches below the loading platform and about 8 inches wide.

On the day in question, March 3, 1954, plaintiff and his truck driver drove by truck to defendant's place of business and bought some slaughtered lambs. The meat was taken to the loading platform. The driver brought up the truck and the meat was loaded into it. Plaintiff then went to the south edge of the loading area, stepped on the ledge which, as we have said, was 6 to 8 inches below the platform, braced himself against the wall of the adjoining building and then stepped on a concrete block located on the concrete floor of the loading area. Plaintiff contends that the block had been placed there for such purpose and had been safely used in that fashion by many customers and by employees of defendant for a considerable time prior to that day. There had been a snowfall and on this occasion snow and ice had accumulated which, according to some of the testimony, had come

from the roof over the loading platform. The concrete block slipped when plaintiff stepped on it and plaintiff fell, receiving the injuries complained of.

Plaintiff testified that there were 40 to 50 employees in the packing company; that every one who came out of the plant and went on the dock used the concrete block as a stepping stone or jumped off the dock; that he had seen defendant himself use the block that way about 100 times prior to this event and that customers, truck drivers and employees all so used the block. The block had been there 8 to 12 months at the time of the accident; it was always in the same spot; plaintiff had never seen it moved, and so far as he knew, it was permanent. After the truck was loaded, plaintiff testified, he had occasion to see the road pavement beneath the truck and saw ice practically all along the length of the dock. He also saw the roof over the dock on that day. There was no spout of any kind on it and snow was dripping off. The driver of plaintiff's truck supported plaintiff's testimony. The testimony of plaintiff and his truck driver are adequate to send the case to the jury. The court properly denied the motion for directed verdict and for judgment notwithstanding the verdict.

Defendant denied the essential portions of the testimony of plaintiff and his truck driver, but his testimony was discredited to a considerable extent by his pre-trial deposition. He testified at the trial that he had provided a movable stairway, but in the pre-trial deposition taken on March 8, 1956, he testified that he did not recall any ladder or steps being provided at the loading platform. In fact, at that time he testified that "Neither I, my brother or any subordinate was in charge of the dock." A mason contractor who did work for defendant testified that there had been a movable stairway on the north side of the dock; that he was there part time during the month of December

171

1953 and the first half of January. The injuries in question occurred, as we have said, on March 3, 1954. The contractor also testified that among the ways of getting on the dock was climbing up to it, climbing over the ledge, or using the stairway. The parties agreed that it had snowed on the day preceding plaintiff's injuries. Weather reports indicated that it snowed slightly on the day in question. Clearly, this was a case for the jury. The verdict was not against the manifest weight of the evidence.

Defendant in his answer denied that he controlled the loading platform and denied that he invited plaintiff either expressly or by implication to come upon the platform. During the trial defendant changed his position and admitted that he had invited plaintiff to come on the premises to conduct business with him. He also admitted that the platform or dock was under his control, supervision and direction, and was provided for the use of wholesalers who did business with him.

██ With respect to the ledge and the cement block as a means of descending from the platform, defendant contends that plaintiff was a mere licensee and that therefore defendant was only liable for wilful and wanton injuries. The invitation to do business extends not only to the portion of the premises where the business is transacted, but to all such parts of the premises as it is reasonable for a visitor to believe are held open to him, including those portions of the premises which provide a means of access to or egress from the place where the business was transacted. Pauckner v. Wakem, 231 Ill 276, 83 NE 202. Restatement, Torts § 343, p 942. See Brett v. Century Petroleums, Inc., 302 Ill App 99, 23 NE2d 359. The rule as stated in Restatement, Torts, supra, is as follows:

"A business invitation includes an invitation to use such part of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his business is to be transacted. If the possessor has intentionally or negligently misled the visitor into the reasonable belief that a particular passageway or door is an appropriate means of reaching the business area, the visitor is entitled to the protection of a business visitor while using this passageway. . . . Since the status of the other as a business visitor depends upon whether the possessor should have known that his visitor would be led to believe that part of the premises are held open to him as a business visitor, the question is often one of fact and as such a matter for the jury."

See also CJS, vol 65, § 48, p 539—Negligence; Happy v. Walz, 358 Mo 56, 213 SW2d 410; Tschumy v. Brook's Market, 60 Cal App2d 158, 140 P2d 431; Johnston v. DeLaGuerra Properties, 170 P2d 5 (Cal); Ingalls v. Western Reserve University, 102 NE2d 605 (Ohio); Smith v. August A. Busch Co., 329 Mass 615, 109 NE2d 843. Thus the question is one of fact as well as law; that is, was it reasonable to believe that the block and ledge were held open to plaintiff as a means of egress from the dock? If we accept plaintiff's testimony, which the jury evidently believed and which under the circumstances of this case we cannot reject, it appears that for a considerable period of time prior to the injury complained of, employees, customers and defendant himself had been leaving the loading platform in the same manner in which plaintiff left it. We must consider the jury's verdict to be conclusive on this point.

Defendant's duty toward plaintiff as an invitee was to exercise reasonable care to discover defects or dangerous conditions on the premises, and he is liable for injuries resulting from a condition which he could have discovered in the exercise of reasonable care, that is to say, a patent defect. He is not liable for defects latent in character. Placher v. Streepy, 19 Ill App2d 183, 153 NE2d 369; National Builders Bank of Chicago v. Schuham, 319 Ill App 546, 49 NE 2d 825. Defendant claims this was a latent defect. A latent defect is one hidden from the knowledge as well as from the sight and must be one which could not be discovered by the exercise of ordinary and reasonable care. Smith v. Morrow, 230 Ill App 382, 390; Kordig v. Grovedale Oleander Homes, Inc., 18 Ill App2d 48, 55, 151 NE2d 470. In Smith v. Morrow, supra, where a railing which had been exposed to snow, rain, heat and cold for six years was involved, the court said, at p 390:

"Merely looking at it might not have revealed the rusty nails which were concealed, but an inspection probably would have revealed the rotten ends of the rails, or there would have been some indication that the ends of the rails were rotten. Undoubtedly any force applied to the rail in its weakened condition would have demonstrated that it was unsafe."

In Houlihan v. Sulzberger & Sons Co., 282 Ill 76, 118 NE 429, the court said that inspection with a sharp point or instrument would have disclosed the condition and therefore it was a question of fact whether a reasonably thorough inspection would have disclosed the unsafe condition.

Defendant argues that in the instant case the condition as it existed on the day of the injury was created by snow falling during the night previous to the oc-

174

currence and hence was latent. In Stroyeck v. Staley Mfg. Co., 26 Ill App2d 76, 167 NE2d 689, the court does not use the terms "latent" or "patent," but its ruling is material to this point. There the plaintiff fell on a sidewalk built by the defendant. It was at a 13.6 degree grade. There was expert testimony that a 15 degree grade is safe in good weather, but that beyond a 5 degree grade, danger created by snow and ice increases rapidly. The court ruled that the jury could have found that the defendant knew or should have known this and was therefore liable for the defect.

■ ■ Where a condition exists which will be made dangerous by snow and ice and where it can be discovered prior to the existence of the snow and ice, the condition is a patent defect. The accident occurred at a time when snow and ice can be expected. An owner of premises must anticipate normal weather conditions. Purtell v. Philadelphia Coal Co., 256 Ill 110, 99 NE 899. There is ample basis for the finding in the instant case that defendant could by reasonable inspection have discovered that during the winter the cement block would be a dangerous means of egress from the dock.

■ ■ Defendant's next point is that in using the block as a step, plaintiff was himself negligent. He sets out the following testimony of plaintiff: "In using this ledge and this concrete block I'd go to the end of the dock, put my right foot on the ledge and push on it in order to have my back against the wall there and then the second step was the granite block which I stepped down on using my left foot." Plaintiff admitted that he knew there was ice on the floor below the dock. Defendant says this is sufficient as a matter of law to find plaintiff guilty of negligence. To so find, the court would have had to conclude that under the evidence all

175

reasonable men would agree that plaintiff had not used due care and caution for his own safety. Pollard v. Broadway Central Hotel Corp., 353 Ill 312, 187 NE 487.

As we have hereinbefore stated, the testimony shows that this was a common method of exit; that it was commonly used by defendant himself, by his employees and by others doing business with him. The only other method of egress was for plaintiff to go back into the building, through the door into Halsted Street, back to the loading area and then to his truck. The law requires that degree of care which ordinary men would use under similar circumstances. We cannot say that reasonable men engaged in a similar activity would not have acted as plaintiff did in this case. The question was one for the jury.

Defendant argues that when a plaintiff uses premises which he knows to be dangerous, he is as a matter of law guilty of contributory negligence. But in Durkin v. Lewitz, 3 Ill App2d 481, 123 NE2d 151, this court held that it is not per se negligence for a person to go upon dangerous premises. There, the plaintiff fell on ice covered steps. Although she went upon the steps knowing their dangerous condition, the court held that her negligence was a question for the jury.

There remain for consideration other errors alleged to have occurred in the trial of the case. It is charged that the court committed reversible error in permitting plaintiff to read into evidence that part of defendant's answer in which he denied that he controlled the platform or that he had invited plaintiff to come thereon. During the trial defendant on examination admitted control of the loading platform and that plaintiff was invited to come thereon to conduct his business. Thus, argues defendant, the question having been admitted, it was no longer an issue

176

in the case and therefore the answer could not be used for impeachment. He argues that this applies where the attorney and not the defendant had signed the answer. An attorney acts on behalf of his client. There are circumstances under which a client is not chargeable with all that his attorney does. Nevertheless, the presumption is strong that defendant's attorney did not deny or allege facts without having consulted his client. Defendant put upon plaintiff the burden of proving or being prepared to prove that defendant had control of the loading platform. It was only after the trial had started that defendant undertook to eliminate the issue. Even so, he did not do it by way of amendment. In Linn v. Clark, 295 Ill 22, 128 NE 824, the court held that even though a bill in equity had been subsequently amended and even though it had not been signed by the plaintiff, it was still available for impeachment. In Macabee v. Miller, 316 Ill App 157, 44 NE2d 341 (abst opinion), the ownership and operation of a certain device originally was admitted. This was without the knowledge or authority of the defendant and was contrary to the facts in the case. The court would not permit the original answer in evidence. See also Bennett v. Auditorium Bldg. Corp., 299 Ill App 139, 19 NE2d 626; Niederle v. Chicago Rapid Transit Co., 264 Ill App 347. In the instant case the denial was of a simple, important fact—the ownership and control of the loading area. Did defendant retract only after the truth became obvious? The trial court was in the best position to pass upon this and it was within his discretion to determine whether defendant's admission was sufficient to eliminate the use of the answer as a basis for impeachment.

 Defendant further claims that it was prejudicial error for the court to strike the statement of his attorney that the averments of the answer were

merely "the averments of the attorney and that it was not signed by the defendant." His statement that it was not signed by defendant could only be construed by the jury as meaning that because defendant had not personally signed the answer, he was not to be considered as having committed himself to the issues thereby defined. The court properly struck his remarks from the record. In this day when the courts are overwhelmed with this type of practice, it is important that lawyers state the issues in their pleadings and upon trial simply and truthfully and restrict themselves to aiding the courts in arriving at a fair disposition of the matter before them.

██ More than seventy-five thousand jury cases crowd the calendars of the courts of this county and delays of six, seven and eight years are common before a jury case is terminated. All former devices which made for procrastination, confusion and delay must be eliminated. There is no longer any place for the general issue lawyer who denies everything so as to put his opponent to proof on every issue. The Civil Practice Act and the amendments thereto have been designed to avoid this. It is not a question of professional idealism. It is a desperate effort to preserve some measure of functional value for the system under which we seek to do justice to the thousands of litigants who have become involved. The interests of the profession and of the public require that a pleading shall be a true statement of the understanding of the party at the time he filed it, except of course for such mistakes or misapprehensions as are unavoidable under the pressure of legal practice. Defendant and his lawyer must or should have known that he owned and controlled the premises involved, including the loading area.

██ There is no merit in defendant's contention that the court in giving plaintiff's Instruction No. 3,

178

setting forth the issues as made by the pleadings, violated the rule set forth in Signa v. Alluri, 351 Ill App 11, 113 NE2d 475. In that case this court did not rule out the giving of an instruction on the issues of the case as made by the pleadings. On the contrary, it recognized that it was desirable to have such a statement. What was found objectionable in Signa v. Alluri, supra, was the practice of using repetitious and forensic phrases in pleadings so that the trial court in reading the instruction to the jury would appear to be arguing the case of the party who had prepared the pleading. The decision in that case held that the court should inform the jury of the issues made by the pleadings in a clear and concise manner, without repetition and without undue emphasis. This method was approved and finally incorporated in "Illinois Pattern Jury Instructions," 20.00–20.04. In the instant case if defendant had formally amended his pleading so as to change the issue, the instruction would have covered the amended answer.

 Further complaint is made that defendant was interrogated with respect to matters which were neither impeaching nor material to the issues. Defendant had given a prior deposition and on the trial plaintiff's attorney pointed out various inconsistencies and contradictions in the testimony. In so doing he referred to some matters which to us on reading the cold print do not appear vital to the case. Yet the error was comparatively mild. The issues were simple. The case was tried by a jury under the direction of a competent and experienced trial judge. There is no occasion to require another trial.

Judgment affirmed.

DEMPSEY, P. J. and McCORMICK, J., concur.