RICHARD L. SMALLING, Plaintiff-Appellant, *v.* LaSALLE NATIONAL BANK OF CHICAGO, Trustee, *et al.*, Defendants-Appellees.

Fourth District    No. 17327

Opinion filed March 16, 1982.

Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur (David L. Johnson and Jay M. Watts, of counsel), for appellant.

Craig J. Causeman, of Thomas, Mamer, Haughey & Miller, of Champaign, Phebus, Tummelson, Bryan & Knox, of Urbana, and Armstrong, Winters, Prince, Fetherstun & Johnson, of Decatur (Hurshal C. Tummelson, Robert D. Winters, and Daniel L. Gaumer, of counsel), for appellees.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, Richard Smalling, appeals from an order of the circuit court of Champaign County granting the defendants', LaSalle National Bank, Landau and Heyman, P.A. Bergner & Company, and Brown's Sporting

Goods, motions for summary judgment against plaintiff's complaint alleging personal injuries from a fall on snow on defendants' loading ramp.

On November 29, 1978, plaintiff filed a complaint for personal injuries against the defendants seeking recovery of medical expenses, lost wages, and other damages incurred as a result of a fall on a snow covered ramp at the Market Place Mall in Champaign, Illinois. An amended complaint, filed following defendants' motion to dismiss, alleged that plaintiff had gone to the Market Place Mall to purchase a ping-pong table at defendants' P.A. Bergner & Company or Brown's Sporting Goods. Plaintiff alleged that the legal title to the premises in question was held by LaSalle National Bank, beneficial interest was held by Landau and Heyman, and that all defendants were in joint control of the premises in question. Plaintiff stated that he had paid for the ping-pong table and was directed by an employee of P.A. Bergner or Brown's Sporting Goods to drive to a loading dock at the rear of the store to pick up the table. Plaintiff went to the loading dock and was told that he could wait until another employee arrived to assist the clerk or he could help in loading the table. Plaintiff decided to assist the clerk, and as he was backing down the snow-covered ramp, estimated to be 50 feet long and 30 degrees, he fell in the snow sustaining injuries to his leg and knee. At a discovery deposition, plaintiff testified that at the time he went into the store it had begun to snow and that there was snow on the ground. Plaintiff also stated that while he was waiting for an ambulance to arrive after he fell, he heard an employee rebuke another employee for not clearing the snow from the ramp.

Plaintiff's amended complaint alleged that defendants had breached one of the following duties owed to the plaintiff: (a) failed to remove or take steps to prevent the accumulation of ice and snow from said ramp or walkway, when they knew, or should have known, that customers would be using the same; (b) failed to warn plaintiff of the condition of said ramp or walkway when they knew, or should have known, of the dangers and unsafe conditions thereof; (c) permitted the said ramp or walkway to become covered with ice and snow when they knew, or should have known, it would be used by the public; (d) directed plaintiff to said ramp and requested him to use the same when they knew, or should have known, of its dangerous and unsafe conditions. Following the denial of defendants', LaSalle National Bank and Landau and Heyman, motions to dismiss, all defendants filed a motion for summary judgment. On June 19, 1981, the trial court entered an order granting defendants' motions for summary judgment, and it is from this order that plaintiff appeals.

Plaintiff argues that the trial court's action in granting defendants' motions for summary judgment was error, as material questions of fact existed regarding the condition of the ramp in question. Specifically,

plaintiff contends that it was error to grant summary judgment because he was precluded from presenting evidence to show that the ramp had a defective condition or design which in combination with the snow resulted in the injuries. Despite these contentions, however, no allegation was made in plaintiff's complaint that the ramp was unsafely designed or defective, and no affidavits or other evidence were introduced on this issue aside from plaintiff's testimony that the ramp was 30 degrees in grade. If plaintiff had such evidence to present regarding the defective nature of the ramp, it was incumbent upon him to produce evidence of such defective design prior to the hearing on defendants' motions for summary judgment to support his *prima facie* case. (*Kimbrough v. Jewel Companies, Inc.* (1981), 92 Ill. App. 3d 813, 819, 416 N.E.2d 328, 333.) Plaintiff's contrary contention that other evidence would have been forthcoming is inconsistent with the summary purposes of a section 57 motion (Ill. Rev. Stat. 1979, ch. 110, par. 57) for summary judgment, and would, if allowed, result in a trial despite the fact that plaintiff's theory of recovery and proof in support would be insufficient to sustain a jury verdict in his favor. Thus, eliminating this consideration from our review of whether summary judgment was proper, the question we must decide is whether, viewing the evidence contained in the pleadings and deposition in a light most favorable to plaintiff, no material question of fact exists and the defendants are entitled to a judgment as a matter of law. *Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031.

■■ We first note that although several jurisdictions have imposed a more stringent duty on owners or occupiers of land with regard to the removal of natural accumulations of ice and snow (see *Dawson v. Payless For Drugs* (1967), 248 Or. 334, 433 P.2d 1019; *Quinlivan v. Great Atlantic & Pacific Tea Co.* (1975), 395 Mich. 244, 235 N.W.2d 732; *Kremer v. Carr's Food Center, Inc.* (Alas. 1969), 462 P.2d 747; *King Soopers, Inc. v. Mitchell* (1959), 140 Colo. 119, 342 P.2d 1006), the law in Illinois is well established that a landowner has no duty to remove or take other precautions against the dangers inherent in natural accumulations of snow and ice. See *Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133, 115 N.E.2d 288; *Hankla v. Burger Chef Systems* (1981), 93 Ill. App. 3d 909, 418 N.E.2d 35; *Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031; *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16; *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449; *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359; *Newcomm v. Jul* (1971), 133 Ill. App. 2d 918, 273 N.E.2d 699; *DeMario v. Sears Roebuck & Co.* (1972), 6 Ill. App. 3d 46, 284 N.E.2d 330; *Byrne v. Catholic Bishop of Chicago* (1971), 131 Ill. App. 2d 356, 266 N.E.2d 708; *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534.

Liability will be imposed, however, where the injury occurred as a result of snow and ice which is produced or accumulated by an artificial cause or in an unnatural way or by defendant's own use of the area concerned and creation of the condition. (*McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 548, 400 N.E.2d 16, 19; *Stroyeck v. A. E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 83, 167 N.E.2d 689, 692; *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 318, 173 N.E.2d 534, 540; *McGourty v. Chiapetti* (1962), 38 Ill. App. 2d 165, 186 N.E.2d 102.) In *McCann*, the plaintiff had fallen on a patch of ice in defendant's lot which had been cleared the day before the accident. Plaintiff presented the affidavit of an architect which indicated that the slope of the parking lot had caused an unnatural accumulation of ice as a result of alternate days of thawing and freezing allowing water to drain and refreeze in the area where plaintiff fell. In considering whether summary judgment was properly entered for the defendant, the appellate court held that an issue of fact existed as to whether the slope of the parking lot was a dangerous condition creating an unnatural accumulation of ice and reversed the order allowing defendant's motion for summary judgment. (Accord, *Fitzsimons*.) In *Stroyeck*, plaintiff was injured from a fall on an ice covered sidewalk having a 13.6-degree grade while walking to her place of employment in the predawn hours. On appeal from the judgment entered on the jury verdict for plaintiff, the court noted that the combination of the steep grade, inadequate lighting and the fact that defendant's engineers had previously drawn up plans to remedy the slope on the sidewalk but had not done so, was sufficient evidence to uphold the implicit finding by the jury that the defendant was negligent. No natural accumulation was present in *Stroyeck*, however, since the evidence indicated that there was no ice and snow present in the neighborhood and the presence of the ice at the bottom of the ramp in question was a mystery. In *McGourty*, a business invitee was injured when he stepped upon a concrete block, which was covered with snow and ice falling from the overhead roof, used as a means of ingress and egress to defendant's loading dock. On appeal from the judgment entered on the jury verdict against defendant in plaintiff's suit for personal injuries, the court held that the evidence was sufficient to present a jury question and that the denial of defendant's motion for a directed verdict and judgment notwithstanding the verdict was proper. The court stated:

> "Where a condition exists which will be made dangerous by snow and ice and where it can be discovered prior to the existence of the snow and ice, the condition is a patent defect. * * * There is ample basis for the finding in the instant case that defendant could by reasonable inspection have discovered that during the winter

the cement block would be a dangerous means of egress from the dock." (38 Ill. App. 2d 165, 175, 186 N.E.2d 102, 106.)

Thus the duty of the defendant in *McGourty* to exercise reasonable care toward business invitees (see *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 125 N.E.2d 47) to discover and remedy patent defects was breached by the defendant's failure to substitute a safer means of ingress and egress from the business premises. Like *Stroyeck*, the *McGourty* holding is not inconsistent with the natural accumulation rule. In *McGourty* the proof went to the defective nature of the steps and not that the defective condition to be remedied was the presence of the snow and ice. The snow and ice on the step was an unnatural accumulation, aggravating the already defective step.

Neither of these factors is present in the case at bar. Plaintiff made no allegation and offered no proof that the injury occurred as the result of a defect in the design or construction of the ramp and the record is clear that the snow on the ramp in question accumulated naturally, consistent with the general conditions prevalent in the neighborhood.

Likewise, in *Greenwood* and *Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94, 289 N.E.2d 250, no liability was imposed on landowners for injuries sustained on inclined surfaces covered with natural accumulation of ice and snow. In *Davis*, plaintiff, a pedestrian, fell on a slanting icy sidewalk having an incline of 5.7 degrees. The trial court granted defendant's motion for a directed verdict against the proof offered in support of plaintiff's complaint seeking damages for personal injuries, and on appeal from this order, the court concluded:

> "Considering the slight angle of incline, we believe the overwhelming weight of the evidence to have demonstrated that plaintiff's fall was caused not by the slope of the sidewalk but rather by the snow and ice conditions for which the City was not responsible under the circumstances of this case." (8 Ill. App. 3d 94, 97, 289 N.E.2d 250, 252.)

In *Greenwood*, plaintiff slipped on ice on a recessed sloping entrance to defendant's grocery store. In considering whether summary judgment was properly entered against plaintiff's suit for personal injuries, the court concluded that plaintiff's failure to allege that the ice and snow accumulated unnaturally or that the defendant created an unnatural condition of snow and ice was fatal to plaintiff's suit and affirmed the order granting defendant's motion. The court also noted that since plaintiff failed to introduce evidence to establish that the inclined surface had anything to do with the fall, the incline of the entranceway did not present a question of fact to preclude summary judgment.

■■■ Considering the pleadings and the deposition of plaintiff, we conclude, as did the trial court, that there was no genuine issue of material

fact and that the defendants were entitled to judgment as a matter of law (Ill. Rev. Stat. 1979, ch. 110, par. 57; *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 547, 400 N.E.2d 16, 19). Our review of the decisional law leads us to conclude that injuries arising from falls on ice and snow covered inclined surfaces, which have natural accumulations of ice and snow, do not give rise to liability on the part of the landowner. In the case at bar, plaintiff made no allegation and offered no proof on the issue of the defective nature or design defect of the ramp in question. Further, it is uncontradicted that the snow in question was a natural accumulation on the ramp.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

MILLS, J., concurs.

JUSTICE LONDRIGAN, dissenting:

I have dissented from the opinion of the court because I believe it to be an erroneous perpetuation of an inapplicable rule of law which allows landowners complete immunity from liability resulting from injuries occurring on natural accumulations of snow and ice on business premises. An examination of the case law applicable to the circumstances at bar makes it apparent that the natural accumulation rule is not the proper standard to be applied relative to the duties of landowners toward business invitees.

One of the first cases in this State involving the liability of landowners for injuries arising from falls on accumulations of snow and ice was *Graham v. City of Chicago* (1931), 346 Ill. 638, 178 N.E. 911. In *Graham*, plaintiff, a pedestrian, had fallen on a patch of ice which had formed on a public sidewalk when an artificial ice rink, created by a public school, overflowed on a sidewalk and froze. Plaintiff brought suit against the city on a negligence theory and at trial recovered a jury verdict in her favor. On appeal to the Illinois Supreme Court, that court affirmed the jury verdict, finding the accumulation to have been an unnatural one which warranted the imposition of liability. In discussing the duties owed by the municipality toward pedestrians, the court stated:

"What, if any, duty devolves upon a city to remove ice from its sidewalks is a subject of a great variety of opinions, and because of this divergence of views a number of different and contradictory statements of the law have been laid down in various jurisdictions. However, there is one rule which is almost universal. That is, a city is not liable for injuries resulting from the general slipperiness of its

streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes. (13 R. C. L. 'Highways,' 408; *Spillane v. Fitchburg*, 177 Mass. 87; *Reedy v. St. Louis Brewing Ass'n*, 161 Mo. 523, 53 L. R. A. 805.)" (346 Ill. 638, 641, 178 N.E. 911, 912.)

In further language indicating the premise upon which such a rule was founded, the court noted:

"It is grounded on the fact that it is unreasonable to compel a city to expend the money and perform the labor necessary to keep its walks reasonably free from ice and snow during winter months. Especially is it true in this latitude." 346 Ill. 638, 643, 178 N.E. 911, 913.

Following *Graham* was the case of *Cronin v. Brownlie* (1952), 348 Ill. App. 448, 109 N.E.2d 352. In *Cronin*, the issue before the court was the liability of a landlord for injuries to a tenant sustained by the tenant on a slippery walk covered with a natural accumulation of snow and ice. Though the only authorities controlling were *Graham* and *Strappelli v. City of Chicago* (1939), 371 Ill. 72, 20 N.E.2d 43, a case also involving liability of a municipality for injuries due to natural accumulations of snow and ice, the court reversed the jury verdict in plaintiff's favor and held that no liability would be imposed upon landowners for injuries arising from natural accumulations of snow and ice. Though significant factual differences existed between the basis for the natural accumulation rule for municipalities and landowners, the court stated:

"The rule denying liability of cities on grounds of unreasonableness and impracticability while not decisive of the issues here is in some measure pertinent." (348 Ill. App. 448, 453, 109 N.E.2d 352, 355.)

Later, the court made the unwarranted extension from the controlling cases when it stated:

"In our northern climate where ice and snow come frequently and are accepted by all, it appears to us that the rule adopted by the majority of the States finding no liability against the landlord is more reasonable and persuasive than the minority view." 348 Ill. App. 448, 456, 109 N.E.2d 352, 356.

Thus we find the opinion in *Graham* was carried over and applied in *Cronin*, and these cases were later relied upon in *Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133, 115 N.E.2d 288. *Riccitelli* was relied upon by *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449, which was cited as authority in *Hankla v. Burger Chef Systems, Inc.* (1981), 93 Ill. App. 3d 909, 418 N.E.2d 35, and *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16. All of these cases were used by the majority to support the application of the natural accumulation rule to the case at bar.

It is admitted by the defendants that plaintiff was a business invitee, and I perceive no reason not to apply the standards of the Restatement (Second) of Torts §§343 and 343A (1965), adopted by the supreme court in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, and applied by this court in *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868, 423 N.E.2d 942. The natural accumulation rule was originally applied only to the duties of municipalities to pedestrians and then later was extended to the quite different context of landowners and business invitees. In my view, this factual difference is so great as to not justify its extension. Moreover, the position taken herein represents a trend among other States which have rejected the application of the natural accumulation rule in the context we here consider it. In *Quinlivan v. Great Atlantic & Pacific Tea Co.* (1975), 395 Mich. 244, 235 N.W.2d 732, in considering the liability of a landowner to a business invitee for injuries sustained as a result of a fall on a natural accumulation of snow and ice, the Michigan Supreme Court stated:

> "The line of cases noting the natural accumulation rule, however, uniformly fails to harmonize or reconcile this rule with the rigorous duty which the law recognizes as owed an invitee.
> * * *
> In the landmark case of *Kremer v. Carr's Food Center, Inc.*, 462 P.2d 747 (Alas., 1969), the Alaska Supreme Court rejected application of the 'natural accumulation' rule in the invitor-invitee context.· * * * The Court [in *Kremer*] confined application of the natural accumulation rule to cases involving the duty owed by the municipalities to users of streets and sidewalks, viewing such users as licensees. * * *
> In our view the Alaska Court has appropriately conceived the legal duty owed by the invitor to the invitee." 395 Mich. 244, 256-60, 235 N.W.2d 732, 738-40.

Likewise, the duties the supreme court has dictated for business invitees should be the appropriate standard of care at bar, not the natural accumulation rule which under prior case law was originally applied with respect to the duties owed pedestrians by municipalities. It is understandable that from a policy standpoint such a rule would be the appropriate one for municipalities, but this policy, indicated in *Graham* and quoted above, is simply inapplicable to the invitor-invitee context. Moreover, the natural accumulation rule provides no clear framework of analysis and we find in cases such as *McCann* that liability is imposed against the landowner for water allowed to flow from shoveled snowpiles, and refreeze even though it would seem that the actions of the landowner were quite commendable. Under the natural accumulation rule as applied in

*McCann*, had the landowner done nothing, no liability would have resulted; but because of his actions in removing it, he was held liable.

Cities pass ordinances making it a duty to clean snow from sidewalks. Public policy should encourage the removal of snow. Under the natural accumulation rule, one is exposed to liability for removing snow, but has a defense against a lawsuit for non-removal of snow. As to residential property, the Illinois legislature in 1979 enacted the snow and ice removal act (Ill. Rev. Stat. 1979, ch. 70, pars. 201 and 202), which states:

"It is declared to be the public policy of this State that owners and others residing in residential units be encouraged to clean the sidewalks abutting their residences of snow and ice. The General Assembly, therefore, determines that it is undesirable for any person to be found liable for damages due to his or her efforts in the removal of snow or ice from such sidewalks, except for acts which amount to clear wrongdoing, as described in Section 2 of this Act." Ill. Rev. Stat. 1979, ch. 70, par. 201.

"Any owner, lessor, occupant or other person in charge of any residential property, or any agent of or other person engaged by any such party, who removes or attempts to remove snow or ice from sidewalks abutting the property shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions unless the alleged misconduct was willful or wanton." Ill. Rev. Stat. 1979, ch. 70, par. 202.

The duties of landowners toward business invitees as adopted by the supreme court are those described in section 343 of the Restatement (Second) of Torts, which provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." (Restatement (Second) of Torts §343 (1965).)

Also applicable is section 343A of the Restatement (Second) of Torts:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled

to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated." Restatement (Second) of Torts §343A (1965).

Thus, in the normal case the duty of landowners to take precautions against natural conditions on the land would be abrogated due to the obviousness of the possibility of harm to invitees. However, as indicated in illustration 5 to comment f of section 343A, such a duty may still be present if the landowner should anticipate the harm despite such knowledge by the invitee. Illustration 5 to comment f provides:

"5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C." Restatement (Second) of Torts section 343A, comment f, illustration 5, at 221 (1965).

In the present case, even though the risk of harm to plaintiff was obvious, it is arguable that the defendants would have reason to expect that plaintiff would encounter this risk by taking possession of his purchased goods, despite the probability of harm arising from risks inherent in ice and snow, and that such action by plaintiff was entirely reasonable under the circumstances. If debris or other material had accumulated on the ramp, the provisions in the Restatement would have applied (*Genaust*; *Sepesy*); the same should apply here to the accumulation of ice and snow. Under the record consisting of the complaint and the deposition of plaintiff, a material question of fact still exists regarding whether defendant should have anticipated the harm that could be caused by snow and ice on its sloping ramp, despite its obviousness, and accordingly should have acted to remedy the condition, warn of its potential, or stop traffic on the ramp while the condition existed.

Accordingly, I would reverse the granting of the summary judgment against plaintiff's complaint and remand to allow plaintiff the opportunity to present his proof before the trier of fact.