EILEEN STILES, Plaintiff-Appellant, *v.* PANORAMA LANES, INC., Defendant-Appellee.

Fifth District   No. 81-222

Opinion filed July 16, 1982.

HARRISON, J., dissenting.

C. E. Heiligenstein and Brad L. Badgley, both of Belleville, for appellant.

John L. McMullin and Phillip M. Frazier, both of Brown, James, Rabbitt, Whaley, McMullin & Pitzer, of St. Louis, Missouri, for appellee.

JUSTICE JONES delivered the opinion of the court:

Presented here is the question of whether icy ridges and ruts resulting solely from ordinary vehicular traffic constitute an unnatural accumulation of snow and ice upon a parking lot used for business purposes.

Plaintiff, Eileen Stiles, sought damages in the amount of $25,000 for personal injuries suffered in a fall in the parking lot of defendant, Panorama Lanes, Inc. In her complaint she alleged negligence on the part of defendant for permitting the parking lot "to become rough and uneven with an unnatural accumulation of ice and snow," for permitting "ruts to exist in ice in the parking lot area" and for failing "to remove, salt or otherwise treat an icy or snow covered condition upon its parking lot." The trial court granted defendant's motion for summary judgment, finding no genuine issue as to any material fact with respect to the duties of defendant. Plaintiff appeals contending that summary judgment was improper because the pleadings and depositions raised a genuine issue of material fact, that the condition of the parking lot was "the product of an unnatural accumulation of ice and snow created by defendant's customers and its snow removal effort" and that whether defendant was negligent in the snow removal effort it undertook was a question of fact.

In her deposition plaintiff stated that at about 7:30 p.m. on January 26, 1979, she walked upon defendant's parking lot in order to attend a dance in defendant's building. She said at that time she could see in the parking lot "ice ruts" caused by the tires of automobiles and that as a consequence she "trod over those very carefully when [she] walked in." During the course of the evening it snowed "very badly." When plaintiff emerged from the building a few hours later at about 12:40 a.m. her toe "caught" in a snow-covered icy rut about 20 feet from the building and she fell fracturing her wrist. She said that the parking lot was well lit but that she was unable to see the rut beneath the snow.

According to the deposition of Roger Behrmann, defendant had an oral agreement with him to remove snow from the parking lot. Roger Behrmann stated that he had been instructed by Frank Booker, defendant's president and general manager, to remove "what [snow] I can, you know." To remove the snow he used a backhoe "[n]inety per cent of the time." He explained that he removed only the snow because "[y]ou can't get ice," stating that "[i]f it's packed on there, you can just get the top layer." He explained further why he could remove the snow but not the ice:

> "Well, if you got snow, and it's packed on there with the cars that's run over it, and they pack it on there, and then turntto [*sic*] ice later on, and say, then you get another layer of snow. Okay. Then you come in and you try to remove that layer of snow. You don't have no traction with the ice under that snow to get under it to peel it off, you know."

The witness said that Frank Booker was "going to get some cinders at one time, but I don't know if it was before [the date of plaintiff's fall] or after that."

In his deposition Frank Booker stated that if the parking lot is icy and rutted because of tire marks, he does not attempt to remove that ice or to have it removed. He said, "If it is frozen there, I can't remove it." According to the witness, the parking lot was not spread with cinders, salt, ashes or any other material of that kind.

■■ ■ It is well settled that a property owner is not liable for injury sustained by a business invitee in a fall on any icy sidewalk or parking lot maintained by the property owner for the use of his customers where the accumulation is a natural one and not one caused or aggravated by the property owner. (*Timmons v. Turski* (1981), 103 Ill. App. 3d 36, 430 N.E.2d 1135; *Zide v. Jewel Tea Co.* (1963), 39 Ill. 2d 217, 188 N.E.2d 383.) On the other hand, a property owner may be liable for injury sustained by a business invitee who falls and is injured as a result of snow and ice that did not accumulate as a result of natural causes but as the result of the property owner's conduct in creating an unnatural or artificial ac-

cumulation of snow and ice. (*Smalling v. La Salle National Bank* (1982), 104 Ill. App. 3d 894, 433 N.E.2d 713; *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534.) Although there is no duty to remove natural accumulations of snow and ice from one's premises, a voluntary undertaking to remove such snow and ice may be the basis of liability if the removal is performed negligently. (*DeMario v. Sears, Roebuck & Co.* (1972), 6 Ill. App. 3d 46, 284 N.E.2d 330.) However, mere removal of snow, which may leave a natural ice formation remaining on the premises, does not of itself constitute negligence. *Timmons*; *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16; *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449; *Anderson v. Davis Development Corp.* (1968), 99 Ill. App. 2d 55, 241 N.E.2d 222.

■■ In the case at bar there is nothing to suggest that anything but ordinary vehicular traffic caused the ruts of which plaintiff complains. There is, for example, no suggestion that the ice upon which plaintiff fell resulted from the drainage of melted snow that was later frozen, as happened in *Fitzsimons*, upon which plaintiff relies. There the defendant had plowed snow on his parking lot into two large piles, where it remained for about three weeks during a period of alternately thawing and freezing weather. There was evidence that water from the melting snow had run across the defendant's parking lot and had been later frozen into a sheet of ice that was "rutted" with "ridges" made by wheels of automobiles where the plaintiff fell. We find plaintiff's reliance upon *Fitzsimons* misplaced. As was said in *Zide*, where the plaintiff likewise relied upon *Fitzsimons* and where there was, however, no evidence that the plaintiff, who fell upon the defendant's parking lot, had fallen on ice formed from snow that had melted and so drained:

> "In the Fitz Simons case, the ice upon which the plaintiff fell was described as 'rough and dark,' 'rutted' ice, with 'ridges' made by wheels of automobiles. In the case at bar, the plaintiff, likewise, described the ice at the place she fell as 'heavy, thick, ridged ice.' Beyond the use of these descriptive terms there exists no similarity in the two cases." (39 Ill. App. 2d 217, 224, 188 N.E.2d 383, 386.)

So, too, in the case at bar, the similarity between it and *Fitzsimons* ends with the use of these descriptive terms. In the instant case all that the defendant may be said to have done to cause an unnatural accumulation of snow and ice is to suffer its customers to use its parking lot while snow was upon the ground. In view of the fact that only ordinary vehicular traffic caused the ruts of which plaintiff complains in a place intended for use by such vehicles, we do not think that the ruts resulting from such use may be said to have been an unnatural accumulation of snow and ice created by defendant.

As we have already said, the removal of snow, which may leave a natural ice formation remaining on the premises does not, without more, constitute negligence. Nothing in this record suggests that defendant did more than remove snow and leave what we have deemed to be a natural, rather than an unnatural, ice formation at some time prior to the snowfall on the evening of January 26, 1979. Thus, defendant's conduct in leaving this ice formation did not constitute negligence, and, contrary to plaintiff's assertion here, there was no question of fact on this record as to whether defendant was negligent in the snow removal effort it undertook.

A motion for summary judgment should be granted only where pleadings, depositions, affidavits and other documents demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031.) Because defendant created no unnatural accumulation of snow and ice by permitting its business invitees to operate motor vehicles in the parking lot provided for their use and because defendant in its snow removal effort may, therefore, be said to have left only a natural ice formation, there remains no genuine issue of material fact, and the trial court properly granted defendant's motion for summary judgment.

Affirmed.

KASSERMAN, J., concurs.

JUSTICE HARRISON, dissenting:
I must respectfully dissent.

As the majority opinion stated, a landowner is under no obligation to remove natural accumulations of snow and ice from his property. (*Hankla v. Burger Chef Systems, Inc.* (1981), 93 Ill. App. 3d 909, 910.) Likewise, the mere removal of snow and the exposing of a natural ice surface beneath does not itself constitute negligence. (*Timmons v. Turski* (1981), 103 Ill. App. 3d 36.) Nevertheless, property owners are charged with negligence when the ice upon which plaintiff falls accumulates either as a result of the owner's aggravating a natural condition or because of his engaging in conduct which gives rise to a new, unnatural or artificial condition. For example, in cases where fallen snow was plowed into formations which melted, drained, and then refroze, the new frozen accumulation was termed unnatural. See *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306.

However, it is not always clear which accumulations are natural and which are unnatural. As the Fourth District observed in *Hankla* when it refused to impose liability on the landowner for injuries sustained in a fall

from a snow-covered curb: "The parties have not cited, nor have we found, an Illinois court which has detailed the differences between natural and unnatural accumulations." (*Hankla v. Burger Chef Systems, Inc.* (1981), 93 Ill. App. 3d 909, 911.) Likewise in *Timmons*, a parking lot case factually similar to the present case, we specifically declined to "determine whether such compaction by motor vehicles constitutes a natural or an unnatural accumulation * * *." This court, instead, set aside plaintiff's $20,000 verdict because he failed to introduce evidence showing that defendant caused an unnatural accumulation of snow and ice at the place where plaintiff fell. (*Timmons v. Turski* (1981), 103 Ill. App. 3d 36, 38, 430 N.E.2d 1135, 1137.) Therefore, the issue presented for our determination, previously unaddressed, is whether this type of formation on a business owner's parking lot could constitute an unnatural accumulation. The icy ridges and ruts on the parking lot surface were allegedly formed by automobiles driving on the lot after a snowfall. The automobile traffic occurred because of defendant's implied invitation to enter onto the premises for business purposes. Thus, the character of the initial natural accumulation changed as a result of defendant's use of the area concerned. Under such circumstances, the icy ridges and ruts in the parking lot would constitute unnatural accumulations of ice and snow, in effect created by defendant.

Summary judgment should be granted only where pleadings, depositions, affidavits, and other documents demonstrate that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 144.) Because I feel that frozen ruts and ridges caused by automobile traffic would constitute an unnatural accumulation, I believe there remain genuine issues of material fact as to whether this condition existed on the parking lot surface on the evening of January 26, how the condition developed, and whether, in fact, it was the proximate cause of plaintiff's alleged injuries. Consequently, the judge's decision to grant defendant's motion for summary judgment was in error. I would reverse the court's order and remand this cause for further proceedings.