YVETTE BRANSON *et al.*, Plaintiffs-Appellants, v. R & L INVESTMENT, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—89—1033

Opinion filed April 18, 1990.

Mark S. Schaffner, of Chicago, for appellants.

Pretzel & Stouffer, Chartered (Robert Marc Chemers, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiffs, Yvette and William Branson, appeal from a judgment of the circuit court of Cook County granting summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005), in favor of defendant, R & L Investment, Inc.

On March 17, 1984, plaintiff, Yvette Branson, was delivering mail to a public laundromat at 3401 North Southport in Chicago. The laundromat was owned and operated by defendant, R & L Investment, Inc., which leased the premises from Bresler Realty. Summary judgment was entered as to defendant Bresler Realty, and that order is not involved in this appeal.

Plaintiff's discovery deposition was taken on March 20, 1986. According to her, the entrance to the laundromat is constructed with a ramp immediately inside the entrance door. The ramp is approximately four feet long and escalates approximately six inches, resulting in a slope of 12.5%. This ramp is covered by a ribbed rubber mat. About two feet away, parallel to the entry ramp, is a second ramp for the exit door. The exit ramp is identical to the entry ramp, except that its surface is covered with tile only; there is no protective ribbing.

About five to six feet from the entrance, at the top of the exit ramp, was a puddle of standing water. The floor from the entrance to

this point was dry. Due to poor lighting, plaintiff was unable to see the water until after she had stepped in it. The water was not in one spot; there was a "little here and a little water there." Plaintiff stated that she did not know where the water came from. The closest washing machine was between six inches to one foot from the puddle.

According to plaintiff, it had been snowing for two hours prior to the time of her fall. After entering the building, plaintiff's shoes were still wet from whatever substance had not come off her soles on the matting outside of defendant's premises. When plaintiff stepped into the water, she lost her footing and fell. She attempted to maintain her balance by planting her foot, but due to the construction of the exit ramp, she was unable to do so. At oral argument, plaintiff's attorney stated that the ramp did not cause plaintiff's fall, but its location and the lack of any safety covering on it prevented her from breaking her fall. As a result of the fall, plaintiff sustained severe personal injuries.

Plaintiff filed a complaint against defendant alleging negligence, in that defendant (1) caused or permitted water and other slippery substances to collect on its floor; (2) failed to remove water and slippery substances from its floor; (3) maintained its floor in an unsafe and slippery condition; (4) maintained its exit ramp in an unsafe condition; and (5) failed to warn customers of the unsafe condition of its floor and exit ramp. Defendant moved for summary judgment based on plaintiff's deposition testimony. Summary judgment was granted, and plaintiff now appeals. We affirm.

█ Summary judgment may properly be granted if the pleadings, exhibits, affidavits and depositions on file disclose no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. (*Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 975, 452 N.E.2d 649.) Upon review of the trial court's entry of summary judgment, the appellate court must evaluate whether the trial court ruled correctly in finding that no genuine issue of material fact was raised and whether, as a matter of law, entry of the judgment was correct. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 938, 453 N.E.2d 1133.) Summary judgment should be granted only in cases where the evidence, construed most strongly against the movant, establishes clearly and without any doubt that he has a right thereto. (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958.) Applying these principles, we then determine whether the trial court correctly granted summary judgment.

█ Given the facts presented here, we believe that the proper analysis for resolution of the issues before us requires the application of those principles generally applied in slip-and-fall cases involving ice,

snow and water. (See *Smalling v. La Salle National Bank* (1982), 104 Ill. App. 3d 894, 896, 433 N.E.2d 713; *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359.) Under these established principles, defendant could not be held liable for plaintiff's injuries absent some showing that the accumulation of the water on defendant's floor was of an unnatural origin or that defendant aggravated a natural condition. (*McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16; *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534.) However, at oral argument, plaintiff urged that resolution of this appeal does not turn on a determination of the origin of the water. Rather, she argues, the correct focus of our analysis should be on whether defendant had a duty to provide some protective covering on the exit ramp.

■ Plaintiff first contends that the owner of a business owes a duty to persons on its property to provide a nonskid surface on a grade incline. She maintains that, based on the reasoning in *Stroyeck v. A.E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 167 N.E.2d 689, a defendant is liable for injuries sustained by a plaintiff when the defendant builds a structure, such as a ramp, and fails to provide any safeguards, such as protective matting. The unprotected ramp, plaintiff argues, creates an unreasonable risk upon which liability for injuries may be imposed. We disagree.

Plaintiff misinterprets *Stroyeck*. The fact that the sidewalk in *Stroyeck* was sloped was not the basis upon which liability was imposed. The court there had evidence that the defendant's engineers had studied the sloped sidewalk and had proposed changes to decrease the degree of the slope. From this evidence, the court stated that it was a fair inference that a lesser grade was practical. Liability was properly based on the fact that the defendant had knowledge that the sloped sidewalk created a hazardous condition during seasonal changes.

Such is not the case here. First, as plaintiff concedes, defendant's ramp was not the cause of her fall. Second, even had the ramp been the cause of the fall, the absence of some safety covering, in and of itself, would not have rendered the ramp negligently designed. In *Stroyeck* there was an abrupt change where the sidewalk met the grade change. Here, there was no sudden grade change, there was only an incline. Third, unlike in *Stroyeck*, there were neither allegations nor any evidence that defendant knew or should have known that the ramp created a hazardous condition.

Finally, plaintiff did not allege in her pleadings that her injury resulted from the negligent design of the ramp. All of the allegations in

the complaint focus upon the unsafe condition of the ramp and floor as a result of the slippery condition. Aside from plaintiff's testimony that the ramp was 12.5% in grade, no evidence was introduced on the issue of design. If plaintiff, like in *Stroyeck*, had evidence that the ramp was negligently designed, that it was the proximate cause of her fall, and that defendant had knowledge of the hazardous condition of the ramp, it was incumbent upon her to produce it prior to the hearing on defendant's motion for summary judgment to support her *prima facie* case.

By her argument, plaintiff urges the imposition of a duty on storeowners who install ramps on their premises to provide mats or some other safeguards. Acceptance of plaintiff's argument would impose an unfair burden on storeowners without any guarantee of insulation from liability. Plaintiff has cited to no cases which support her theory of the case, and we decline to impose the duty which she so vigorously advocates. Moreover, we believe that defendant showed, by placing the rubber matting on the entrance ramp, which was the ramp first encountered by persons coming indoors from out of the elements, that he exercised reasonable care in making his premises safe for entry.

■ Plaintiff next argues that defendant has created, by design and maintenance, an unnecessarily and unreasonably dangerous condition. She argues that she was required, because of the positioning of washers, to walk along a narrow unprotected ramp, in order to reach the counter to deliver the mail, and because the area was ill lighted, she was unable to see the water until she had stepped in it.

The physical layout of defendant's premises was not an issue before the trial court; thus, we consider it waived for purposes of our review. However, the issue of lighting was contained in plaintiff's deposition and argued at the hearing on the motion. Thus, we will address it.

■ Property owners have a duty to provide a reasonably safe means of ingress and egress from their place of business, and this duty is not abrogated by the presence of a natural accumulation of ice, snow, or water. (*Kittle v. Liss* (1982), 108 Ill. App. 3d 922, 925, 439 N.E.2d 972.) When a means of ingress and egress is prescribed for invitees, it is the duty of the inviter to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition. *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 87, 523 N.E.2d 594.

In *Kittle*, the plaintiff slipped and fell on a patch of ice on defendant's unlighted staircase. The plaintiff alleged that the fall was the

result of an unnatural accumulation of ice on the step and a failure to provide adequate lighting. On appeal, the court held that while the plaintiff had not presented evidence of an unnatural accumulation of the ice, there was a triable issue of fact as to whether the owner provided adequate lighting in accordance with his duty to provide a reasonably safe means of ingress and egress. *Kittle*, 108 Ill. App. 3d at 925-26.

The defendant in *Kittle* argued that his case was controlled by the holding in *Newcomm v. Jul* (1971), 133 Ill. App. 2d 918, 273 N.E.2d 699, where the court held that a restaurant operator was under no duty to warn, by way of illumination, against hazards which were the result of natural accumulations of ice and snow on the sidewalk. The *Kittle* court distinguished *Newcomm* on its facts. The court stated that *Newcomm* involved a level sidewalk, not a stairway, as a means of ingress and egress, and thus, lighting in the area was not as necessary to customer safety as it was in *Kittle*. See also *Allgauer v. Le Bastille, Inc.* (1981), 101 Ill. App. 3d 978, 428 N.E.2d 1146 (stairway which is concealed or difficult to adequately see held to present question for jury as to whether defendant breached duty to give warning of hidden dangers).

■ Since plaintiff presented no evidence to the contrary, we consider, for purposes of this argument, that the water on defendant's floor was natural in origin. Here, there was no evidence that, but for the water, entry onto defendant's premises would not have been safe. Plaintiff here did not, as in *Kittle*, fall on a staircase. She fell on defendant's floor. There is no evidence to indicate that the ramp, which she claims contributed to her fall, was hidden or difficult to see. In fact, the lighting was adequate enough to enable plaintiff to read and confirm the name and address on the letter which she was delivering to the laundromat.

We believe the reasoning in *Newcomm* to be sound, and we therefore follow it. There the court stated:

> "If liability of a business owner may not be predicated on falls resulting from natural accumulations of ice and snow it follows that the business owner is not required to warn of the presence of such natural accumulations of ice and snow. The duty of warning against a particular condition or hazard co-exists with the corresponding liability for the consequences or hazards of the condition if no appropriate warning is given.
> ***
> Absent any evidence that the ice or snow was the result of an unnatural or artificial accumulation thereof the only infer-

ence is that it was a natural accumulation and if so defendant was under no duty of warning (by way of illumination) against the hazards thereof." *Newcomm*, 133 Ill. App. 2d at 921-22.

Since defendant is not liable for injuries sustained by invitees in falls caused by natural accumulations of ice and snow, he cannot be held liable for a failure to provide adequate safeguards to prevent plaintiff or others from falling as a result of those natural accumulations. There is no evidence that the means of ingress and egress was unsafe for any reason other than the accumulation of water. Thus, we do not find the issue of lighting to have been a triable issue for the jury.

Plaintiff's alternate contention on appeal is that there was sufficient evidence in the record to send the case to the jury. Specifically, she argues that since no one could testify as to the precise source of the water, the source may be determined by inferences. Thus, she argues, based on the location of the washing machines in relation to the place of her fall, it could be inferred that the water resulted either from a leaking washing machine or from a customer having spilled it.

■ Inferences may be drawn from the facts which are not in dispute, and if reasonable persons could draw different inferences from these facts, then a triable issue exists. (*Armagast v. Medici Gallery & Coffee House, Inc.* (1977), 47 Ill. App. 3d 892, 896, 356 N.E.2d 446.) However, a fact is not established from circumstantial evidence unless the circumstances or events are so related to each other, as to make the conclusion the only probable, not possible, one which can be drawn from them. (*Johnson v. Burlington Northern, Inc.* (1982), 107 Ill. App. 3d 130, 135, 437 N.E.2d 334.) In light of the facts presented in this case, we cannot infer, from the mere presence of the washing machines, that the water was of an unnatural origin.

■ While a plaintiff in a slip-and-fall case need not prove his case at the summary judgment hearing, in order to defeat the defendant's motion, the plaintiff must affirmatively show that the origin of the water was unnatural or caused by defendant. (*Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center* (1989), 187 Ill. App. 3d 1040, 543 N.E.2d 1014; *Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171, 488 N.E.2d 679; *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 1070, 307 N.E.2d 449; *Byrne v. Catholic Bishop* (1971), 131 Ill. App. 2d 356, 266 N.E.2d 708.) A finding of an unnatural or aggravated natural condition must be based upon an identifiable cause of the water accumulation. (*Lapidus v. Hahn* (1983), 115 Ill. App. 3d 795, 450 N.E.2d 824 (leaky roof); *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16 (sloping parking lot); *Stroy-*

*eck,* 26 Ill. App. 2d 76, 167 N.E.2d 689 (improper sidewalk construction).) Mere speculation or conjecture is not sufficient to establish liability. (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817, 416 N.E.2d 328.) Absent such a showing, summary judgment for the defendant is appropriate since the court owes no duty to reason some remote factual possibility. *Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 558, 467 N.E.2d 947.

▆ It was essential to plaintiff's cause to show that the origin of the water was of an unnatural origin, or that the natural accumulation was aggravated by artificial causes. Since she did not so show, plaintiff has failed to sustain her burden of proof. We conclude that there were no issues of material fact, and summary judgment was proper.

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.