35 F.3d 568
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John CARTER, Plaintiff-Appellant,
v.
D.F.C. TRANSPORTATION COMPANY, a foreign corporation,
Defendant-Appellee.
 No. 93-3838.
 United States Court of Appeals, Seventh Circuit.
 Argued and Decided Aug. 3, 1994.
Issued Aug. 15, 1994.
 
 Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.
 
 ORDER
 
 1
 This is a diversity negligence action resulting from plaintiff's slip and fall on snow or ice in defendant's parking lot. The district court entered summary judgment in favor of defendant, and following oral argument we announced from the bench our decision to affirm. The following explains that decision.
 
 Background
 
 2
 Plaintiff was a truck driver who worked as an independent contractor for D.F.C. Transportation Company. After six weeks on the road, plaintiff returned to defendant's facility in Huntley, Illinois, where it has a large facility housing approximately 400 trucks, dispatchers, garages and offices. Plaintiff walked from where he left the truck over to the parking lot, 500-1000 feet away, where the truck drivers leave their cars while they are on the road. As plaintiff neared his car, he slipped and fell and suffered a broken hip. There was one to three inches of snow on the ground, and the temperature was six degrees below zero.
 
 Discussion
 
 3
 Summary judgment is proper where the pleadings, affidavits, answers to interrogatories and depositions on file establish that no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In a diversity case, the court uses federal procedural law and the relevant state's substantive law, and "[s]ummary judgment is granted in diversity cases when the non-moving party lacks enough evidence to sustain a jury verdict according to the federal standard: whether reasonable minds could deem the evidence adequate under the governing substantive rule." Mayer v. Gary Partners and Co., Ltd., No. 93-3636, slip op. at 5 (7th Cir. July 13, 1994), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51 (1986); Celotex Corp v. Catrett, 477 U.S. 317 (1986); McEwen v. Delta Air Lines, Inc., 919 F.2d 58, 60 (7th Cir.1990).
 
 
 4
 Illinois courts recognize no common law duty of property owners to remove accumulations of ice or snow from areas maintained for the use of their invitees where the accumulations are natural and not caused or aggravated by activities of the owner (or occupier) of the land. American States Insurance Co. v. A.J. Maggio Co., 229 Ill.App.3d 422, 425 593 N.E.2d 1083 (1992). Thus, plaintiff must prove that the ice or snow resulted from an unnatural or artificial accumulation attributable to defendant. Id.
 
 
 5
 Plaintiff's theory is that the water used in washing trucks ran down a slope to where plaintiff's car was parked, and created an unnatural accumulation of ice. Defendant points out that the evidence in the record demonstrates no slope, no water, no truck washing, no ice, and no unnatural accumulations of any kind.
 
 
 6
 Plaintiff only conjectures that the ice he fell on came from trucks being washed outside in sub-zero weather. Defendant, however, provided uncontradicted testimony that in cold weather trucks were not washed outside, and were rarely washed inside. Plaintiff presented no evidence that trucks were being washed on the day he fell or had been washed in the prior few days. All plaintiff offers is that a friend of his went to the Huntley facility 10 to 15 days after the accident and saw a truck being washed 150 feet from plaintiff's still-parked car. But that says nothing about any truck washing prior to the accident. Worse yet, plaintiff's friend also testified that "the water that he was putting out would not have gotten to where Carter's car ... was, no."
 
 
 7
 That brings us to another of plaintiff's proof problems. Even if truck washing did occur, how did the water get from the washing area to where plaintiff's car was parked? Plaintiff submitted only photographs--and no supporting affidavits or testimony to show a slope from the wash area to the accident site. It is impossible to tell from the photographs that any slope existed. The only testimony on the issue is from the person in charge of the wash service facility, who said the ground did not slope down from the service building to the parking area. "I don't think this water, even today, could run this way."
 
 
 8
 Plaintiff failed to bring facts before the court to establish any genuine issue of material fact regarding the cause of his fall. See, e.g., Madeo v. Tri-Land Properties, Inc., 239 Ill.App.3d at 292, 606 N.E.2d at 704 (summary judgment for defendant proper where, while it was "possible" that plaintiff slipped on ice formed when snow from the pile at the east end of the parking lot melted, flowed across the lot and refroze, plaintiff failed to provide "any concrete evidence linking that snow pile to the ice that caused her to slip"); Branson v. R & L Investment, Inc., 196 Ill.App.3d 1088, 1094-95, 554 N.E.2d 624 (1990) (summary judgment for defendant proper where plaintiff failed to show that the "mere presence of the washing machines" near a doorway where plaintiff fell meant that the "water was of an unnatural origin"; a "remote factual possibility" is not enough).
 
 
 9
 It is not enough for plaintiff to merely speculate that if outside truck washing occurred on the day of the accident (or ever), and if the water was able to traverse whatever ruts, snow and other obstacles it might pass on the way to plaintiff's car as it ran downslope (if indeed there was a slope), then ice could have formed near plaintiff's car (if there was any ice, which no one saw that day).
 
 Conclusion
 
 10
 The judgment of the district court is AFFIRMED.