Charlene NIEVES, Plaintiff,

v.

UNITED STATES of America and United States Postal Service, Defendants.

No. 96 C 5695.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 21, 1997.

Corey Edward Meyer, Kathleen A. Dieckman, Law Offices of Corey E. Meyer, Ltd., Chicago, IL, for Plaintiff.

Brian Douglas Bossert, U.S. Attorney's Office, James Morris, Special Asst. U.S. Attorney, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Charlene Nieves, filed a personal injury lawsuit against the defendants, the United States of America and the United States Postal Service (collectively "United States"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The United States moves for

summary judgment pursuant to Federal Rule of Civil Procedure 56(b). For the reasons set forth below, the United States' motion is granted.

*Background*

On Saturday, September 25, 1993, Ms. Nieves went to the Oak Park Post Office ("Oak Park Station") and dropped off a change of address form and purchased stamps. It was not raining when she entered the Oak Park Station but it had been raining earlier in the day.[1] As Ms. Nieves was walking through the Oak Park Station to leave the premises, she slipped and fell on the terrazzo floor and injured her right knee. She subsequently filed a negligence claim seeking damages in excess of $50,000.

In her deposition, Ms. Nieves stated that at the time she fell, she was approximately twenty feet from the east exit door.[2] The area where she fell was an "open area" and "there was nothing around [her]." Nieves Dep. at 8–9. She also stated that before she slipped, she did not notice any liquid on the floor. *Id.* at 10. The first time she noticed that there was water on the floor was after she fell. *Id.* at 32. There was "a little puddle probably about four inches round" at the spot where she fell. *Id.* at 32–33. She did not look around the rest of the post office and so she did not notice any other water on the floor. *Id.*

Ms. Nieves subsequently contradicted her deposition testimony in an affidavit submitted in response to the United States' motion for summary judgment. In that affidavit she stated that "approximately 3 feet from the location where [she] fell there was a table with certified mail and various other forms for customer use. Located upon said table was a bowl with a sponge and water to assist customers with sealing envelopes and stamps." Nieves Aff. ¶ 6. She also stated that before she fell, "as I conducted my business at the Post Office, I did not see water tracked into the facility." *Id.* ¶ 4.

No one witnessed Ms. Nieves fall but shortly thereafter, Dawn Pieroni, a supervisor, and Faith Lopez, a teller, arrived at the spot where Ms. Nieves fell. Ms. Pieroni testified that Ms. Nieves fell in an open space and that there were a few drops of water, the size of "a raisin or a penny" in that area. Pieroni Dep. at 15, 35. According to Ms. Pieroni, the water was being tracked-in by customers. *Id.* at 34–35.

Richard Iacullo, Ms. Nieves' husband, was called to the post office after the fall. Mr. Iacullo also submitted an affidavit in response to the United States' motion for summary judgment. In that statement, he states that when he entered the post office, he noticed Ms. Nieves lying on "what appeared to be a slippery marble floor" "approximately 20 feet from the entrance door" and "approximately 3 feet from . . . a table with certified mail and other various forms for customer use. Also, upon said table, there was a bowl with a sponge and water to assist customers with sealing envelopes and stamps." Iacullo Aff. ¶¶ 7, 9, 10. Mr. Iacullo also "observed a liquid substance next to Charlene Nieves on the floor that appeared to be water." Iacullo Aff. ¶ 8. Furthermore, "at all times while he was in the post office there was no water located on the floor near the entrance doors" and "there was [a] carpet when he initially entered the post office and that said carpet appeared dry and had no water saturation." Iacullo Aff. ¶¶ 6, 11.

*Summary Judgment*

Lawsuits under the FTCA are governed by the substantive law of the state where the alleged act or omission took place. 28 U.S.C. § 1346(b). In this case, Illinois law applies since the alleged negligent act or omission of the United States occurred in Illinois.

■■■ Since the United States is a public entity, it is protected by the provisions of the Illinois Local Government Tort Immunity Act. *See Rose v. United States*, 929 F.Supp. 305, 307 (N.D.Ill.1996) (citing *Cooks v. Unit-*

---

1. Records from the National Climatic Data Center indicate that 1.05 inches of rain fell in the area around Chicago Midway Airport on September 25, 1993.

2. There are three other doors, two on the north side of Oak Park Station and one on the west side for the handicapped.

*ed States,* 815 F.2d 34, 35 (7th Cir.1987)). Thus, Ms. Nieves must prove "that she was owed a duty of care by the United States, that a breach of this duty proximately caused her injuries, and that the United States had actual or constructive notice of the allegedly unsafe condition in time to correct it." *Rose,* 929 F.Supp. at 308 (quoting *Stewart v. United States,* 918 F.Supp. 224, 226–27 (N.D.Ill. 1996)).

█ The general rule in Illinois is that landowners are not liable for injuries resulting from natural accumulations of water from snow, rain, or ice, tracked into the premises by customers. *Lohan v. Walgreens Co.,* 140 Ill.App.3d 171, 488 N.E.2d 679, 680–81, 94 Ill.Dec. 680, 681–82 (1st Dist.1986). Since owners are not liable, they have no duty to remove the tracks or residue from rain left by customers or to warn of such accumulations. *See Stypinski v. First Chicago Bldg. Corp.,* 214 Ill.App.3d 714, 574 N.E.2d 717, 718, 158 Ill.Dec. 604, 605 (1st Dist.1991); *Newcomm v. Jul,* 133 Ill.App.2d 918, 921, 273 N.E.2d 699, 701 (3rd Dist.1971). If the water Ms. Nieves slipped on was tracked-in rainwater, the United States did not breach a duty owed to her. Thus, to withstand the government's motion for summary judgment, Ms. Nieves must allege sufficient facts to permit a trier of fact to find that the United States was responsible for an unnatural accumulation of water that caused her injuries.

█ In this case, Ms. Nieves has failed to meet this burden. It is undisputed that sometime before Ms. Nieves arrived at Oak Park Station, it rained. It is also undisputed, that there was one four-inch round puddle and some other "raisin" or "penny" sized drops of water on the Oak Park Station lobby floor. Ms. Pieroni, the supervisor, stated that water was being tracked-in by customers. There is no other reliable or credible evidence to suggest that the wet floor was the result of anything other than the natural accumulation of rainwater tracked-in by customers.

Ms. Nieves argues that since no one can testify as to the precise source of the water, the source may be determined by inferences. Thus, she argues, based on her and her husband's July 7 affidavits, since she fell

approximately three feet from a table with a bowl and sponge with water, the water was from the bowl (spilled) rather than from natural rain accumulation.

Ms. Nieves' affidavit contradicts her prior deposition testimony. In her deposition she said that she fell in an open area and that there was nothing around her. A party may not avoid summary judgment by submitting an affidavit that conflicts with her earlier deposition testimony. "[W]here there is no explanation of the conflict, self-serving, contradictory affidavits such as this one cannot create genuine issues of material fact." *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1297 (7th Cir.1993).

Neither does Ms. Nieves' affidavit, which also contradicts Ms. Nieves' prior testimony as to where she fell, create a genuine issue of material fact. In *Branson v. R & L Investment, Inc.,* 196 Ill.App.3d 1088, 554 N.E.2d 624, 626, 143 Ill.Dec. 689, 691 (1st Dist.1990), it was undisputed that the plaintiff fell in a puddle six inches to one foot from a washing machine. However, the court held that no reasonable person could infer that because the plaintiff tripped on a puddle close to a washing machine, that the water resulted either from a leaking washing machine or from a customer spill. *See id.,* 554 N.E.2d at 629, 143 Ill Dec. at 694. A reasonable person would infer that the water most probably came from the snow and slush tracked inside. "Mere speculation or conjecture" that the water was from the washing machine was not enough to create a genuine issue as to a material fact. *Id.; see also Buscaglia v. United States,* 1993 WL 191804, *3 (N.D.Ill. 1993) (Nordberg, J.), *rev'd in part, aff'd. in part,* 25 F.3d 530 (7th Cir.1994) (refusing to infer that the post office was negligent from the fact that the janitor at the post office inspected the lobby at 5:55 p.m. and that the plaintiff tripped on a muddy puddle shortly thereafter); *Byrne v. Catholic Bishop of Chicago,* 131 Ill.App.2d 356, 359, 266 N.E.2d 708, 710–11 (1st Dist.1971) (refusing to hypothesize that there was an unnatural accumulation of snow caused by a road grader clearing snow close to the plaintiff's car).

For the reasons stated in *Branson,* assuming that Ms. Nieves did in fact fall three feet away from a table with a water bowl, the mere presence of the water bowl does not create a genuine issue of material fact. It is "mere speculation or conjecture" that the water came from the bowl rather than from the tracked-in rain. Thus, summary judgment for the United States is appropriate.

Ms. Nieves also argues that a landowner is liable for natural accumulations of water tracked into his premises when the floor is particularly slippery and dangerous when wet. *See Sommese v. Maling Bros., Inc.,* 36 Ill.2d 263, 222 N.E.2d 468 (1966); *Fanning v. Lemay,* 78 Ill.App.2d 166, 222 N.E.2d 815 (5th Dist.), *rev'd in part,* 38 Ill.2d 209, 230 N.E.2d 182 (1967). In *Sommese,* an expert witness testified that without abrasive material, an exterior terrazzo floor, upon becoming wet, became unusually slippery and hazardous. 36 Ill.2d at 265, 222 N.E.2d at 469. Similarly, in *Fanning,* the court held only that a complaint alleging that an asphalt floor became unusually slippery when wet stated a cause of action. 78 Ill.App.2d at 173, 222 N.E.2d at 819.

In this case, there is no evidence in the record that the material used in the floor caused the floor to be unusually slippery when wet. There was no expert testimony on the composition of the floor and its properties. The only evidence on this issue is Ms. Nieves' husband's testimony that the floor looked very slippery and that the area where Ms. Nieves fell was not buffed as much as other areas. According to the maintenance manager of the postal facility, buffing makes the floor less slippery. But that does not prove that the floor composition was itself unusually slippery. *See, e.g., Richter v. Burton Investment Properties, Inc.,* 240 Ill. App.3d 998, 608 N.E.2d 1254, 1258, 181 Ill. Dec. 780, 784 (2nd Dist.1993) (summary judgment affirmed where there was no evidence detailing why floor was excessively slippery and dangerous); *Buscaglia v. United States,* 25 F.3d 530, 534–35 (7th Cir.1994) (bare allegation of undue slipperiness insufficient to withstand summary judgment, but affidavit of expert who tested actual sample from floor created a material fact issue as to whether floor was unusually slippery or dangerous when wet). Thus, this argument fails as well.

### Conclusion

For the foregoing reasons, the United States' motion for summary judgment is granted.