2018 IL App (1st) 180474

No. 1-18-0474

Fourth Division
November 1, 2018

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| LESLIE COLE, | ) | |
| | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 15 L 010075 |
| | ) | |
| PAPER STREET GROUP, LLC, and PAPER STREET | ) | The Honorable |
| REALTY, LLC, | ) | Patricia O'Brien Sheahan, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Reyes and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant appeal arises from the trial court's grant of summary judgment in favor of defendants Paper Street Group, LLC, and Paper Street Realty, LLC, in connection with a premises liability lawsuit filed against them by plaintiff Leslie Cole. Plaintiff alleged that she was injured when she slipped on an accumulation of ice on the stairs of a property owned and managed by defendants and alleged that defendants were negligent in failing to keep the premises safe. On appeal, plaintiff claims that she has raised issues of material fact with respect to all elements of her negligence claim. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3                              I. Complaint and Answer

¶ 4        On October 2, 2015, plaintiff filed a complaint against defendants,[1] in which she alleged that defendants "own[ed], operate[d], manage[d] and control[ed]" a building on South Kimbark in Chicago and that, on March 5, 2014, plaintiff was lawfully upon the premises when she was injured through defendants' negligence, "to wit: an unnatural accumulation of ice on the stairwell outside of [the building] that formed as a result of faulty gutters causing her to fall and be injured." The complaint further alleged that defendants "had actual or constructive notice of the existence of the aforesaid unreasonably dangerous condition." The complaint was amended on March 21, 2016, with respect to the allegations against the lawn maintenance company; the allegations against defendants remained the same as in the original complaint.

¶ 5        On December 8, 2015, defendants filed an answer to the complaint, in which they admitted that defendant Paper Street Group, LLC, was the owner of the building and that defendant Paper Street Realty, LLC, managed the building; defendants denied all remaining allegations. As affirmative defenses, defendants alleged that plaintiff's own negligence caused her injuries and that any accumulation of ice was the result of natural accumulation, which defendants did not have a duty to remove.

¶ 6                             II. Motion for Summary Judgment

¶ 7        The parties proceeded to discovery, and on July 5, 2017, defendants filed a motion for summary judgment. Defendants claimed that during the time in which plaintiff had lived at the building, plaintiff had never noticed any problems with the stairwell, nor had she ever

_____

[1]Plaintiff also initially included as defendants the lawn maintenance company and its owner, but the counts against them were voluntarily dismissed on February 26, 2018.

observed ice on the landing prior to her fall. Defendants further claimed that plaintiff testified in her deposition that she fell when descending the stairs after her foot slipped on ice on the first step and that, while plaintiff "speculated" that the ice formed as a result of melting icicles, plaintiff "testified she did not know whether the snow naturally melted on the steps to form the ice." Additionally, agents of defendants testified that they had not been made aware of any complaints concerning the condition of the property or any icicles on the railings. Finally, the owner of the lawn maintenance company, which was responsible for clearing snow and ice from the property, testified that he was not aware of any complaints regarding the condition of the property and further testified that when he arrived at the premises on the day of plaintiff's fall, he observed no ice on the step where plaintiff allegedly slipped. Defendants claimed that "[t]he record contains no evidence regarding the condition of the gutters at the time of the alleged fall. There is no evidence suggesting that [defendants] had knowledge of any alleged defects with the gutters, or that there were any prior complaints that the gutters were faulty."

¶ 8    Defendants claimed that plaintiff's complaint was based on "mere speculation and conjecture" and that there was no evidence to suggest (1) that defendants had faulty gutters, (2) that the faulty gutters caused an unnatural accumulation of ice on the stairs where plaintiff fell, (3) that defendants knew of the faulty gutters causing an unreasonably dangerous condition, or (4) that such an allegedly dangerous condition caused plaintiff's fall. Accordingly, defendants argued that they were entitled to summary judgment.

¶ 9                              A. Plaintiff Deposition

¶ 10    Attached to the motion for summary judgment were several deposition transcripts. First, plaintiff testified in her deposition that she lived in an apartment on the second floor of

3

defendants' building from approximately 2010 to 2015; that each apartment in the building contained a back door that opened onto a porch, and there was a stairway on the back exterior of the building; and that there was a landing at the top of the stairway on each floor, as well as a second landing midway between floors. Plaintiff testified that the building did not have a parking lot, but that she had noticed that when there was snowfall, the snow would be removed from the sidewalk and walkways around the building. Plaintiff also noticed that snow would be removed from the back of the building, including the stairs and landings on each level, and the steps and landings would be salted. During the time she lived at the building, she had never complained about a lack of shoveling, although immediately after her accident, she contacted "Bruce,"[2] the property manager, to inform him that he needed to send someone over to shovel.

¶ 11      Plaintiff testified that, to her recollection, the winter of 2014 was very cold, and the week prior to March 5, 2014, was a cold week. On March 5, 2014, between 10:30 and 11:30 a.m., plaintiff decided to take out the garbage; her usual custom was to leave through her back door, walk downstairs, and deposit the garbage in the trash containers on the ground floor level. Sometime prior to her doing so, it had snowed—plaintiff recalled that "[there] was snow on the ground. [There] was snow on the landing. [There] was snow on the steps of the building." Plaintiff testified that "it ended up" that there was ice in addition to the snow, and specifically, there was ice on the stairs. Plaintiff was asked where the ice came from, and testified that "[t]he ice came from the roof and the ice that was dripping, the *** ice dripping or water dripping from above." However, plaintiff did not know whether the snow that landed on the steps naturally melted and refroze to form ice. The first time that plaintiff

_____

[2]Plaintiff did not know Bruce's last name. However, Bruce Spagnola Jr. was one of defendants' principals.

4

noticed "a lot of" ice developing from the roof was March 5. She did not know the first time that she observed any ice developing at all. Plaintiff testified that she had "no idea" how long the ice had been on the steps prior to her fall, but testified that there was no ice on the steps when she went out the prior week to take out her garbage.

¶ 12    Plaintiff testified that on March 5, when she took out the garbage, plaintiff was wearing a jacket and flat, UGG-type boots. Plaintiff held the garbage bag in her left hand; her right hand was free, and the handrail was to her right. When plaintiff stepped off the landing on her floor and onto the first step, "my foot slipped out from under me and I fell." Plaintiff was not holding the handrail at the time of her fall.

¶ 13    Plaintiff testified that it was approximately three feet from her door to the stairs and that there was approximately half an inch of snow on the porch immediately outside her door; plaintiff did not know how long the snow had been there. There was no ice on plaintiff's porch; plaintiff testified that the ice began after "a foot and a half, two feet approximately, like when I got onto the landing." Plaintiff testified that she "never noticed the ice until I fell *** because it had two inches of snow. It was snow and it was ice." Plaintiff testified that there were two inches of snow "[a]ll over the back porch," but that she noticed the ice beginning at the landing of the stairway. When plaintiff stepped down onto the first step, her foot slipped out from under her and she lost her balance, falling down the stairs; plaintiff landed half on the between-floor landing and half on the step directly above it, with her buttocks and tailbone landing first. After a moment, plaintiff was able to stand and took photos of the location where she fell, then made her way back to her apartment, where she contacted the property manager to inform him about her fall. She also called her uncle, who came to visit her. She sat on the couch for a few minutes and, when she went to stand,

noticed the extent of her injuries, which included pain in her lower back, in her right hip, in her neck, and in her right shoulder. She sat back down because she believed she just needed rest, but was then unable to stand again and so called an ambulance. The paramedics helped her stand and walk down the stairs, and then transported her to the University of Chicago hospital, where she was given a prescription and told to follow up with her doctor. Plaintiff testified that her doctor prescribed her pain pills and topical numbing cream, as well as ordering physical therapy. She also received several lumbar epidural steroid injections over several months, as well as a biacuplasty.

¶ 14    Plaintiff testified that she and her uncle took photographs of the scene on March 5, the day of her fall, as well as two days later; plaintiff could not recall which photographs were taken by her uncle and which photographs she took herself. Plaintiff identified a photograph of the handrail leading from her floor down the stairs to a landing below. Plaintiff also identified a photograph of icicles formed from the roof above the third floor. Plaintiff did not observe any icicles hanging over her second-floor porch and did not recall whether there were any icicles overhanging the first floor. Plaintiff also identified a photograph of icicles hanging from the banister, but could not recall whether they were from her floor or from the floor above. Plaintiff next identified a photograph that depicted icicles at the top of the building and also depicted a portion of the handrail that plaintiff used when descending the stairs from her apartment. Plaintiff then identified a photograph of the landing between her floor and the floor below, which was taken "to show the cleanup." Plaintiff testified that she notified the property manager about her fall, and the next day, "[t]hey came *** and they put salt down, and then they came the next day and cleaned the ice out." Plaintiff also identified a photograph of ice on the banister leading from her floor to the between-floor landing, and

two photographs of the landing, one of which depicted ice that plaintiff testified was "about a half inch" thick. Plaintiff did not know how long the ice had been there and testified that she had never observed the ice prior to her fall. Plaintiff testified that she used those stairs "once a week" to take out her garbage. Plaintiff identified another photograph of ice on a landing, although she could not recall whether the landing was directly outside her apartment door or was the between-floor landing. Finally, plaintiff identified a photograph of the stairs leading from her floor to the between-floor landing.

¶ 15                    B. Michael Abraham Deposition

¶ 16    Next, attached to the motion for summary judgment was a transcript from the discovery deposition of Michael Abraham, the owner of defendants Paper Street Group, LLC, and Paper Street Realty, LLC. Abraham testified that Paper Street Group, LLC, owned certain residential properties, while Paper Street Realty, LLC, was the property management company that managed those properties. Abraham testified that all tenant complaints and repair requests would be acted on, but was unaware of whether, at the time of plaintiff's fall, the property manager would document all such complaints or repair requests. Abraham could not personally recall any complaints made by any tenants concerning snowy or icy conditions on the property in March 2014.

¶ 17    Abraham testified that at the time of plaintiff's fall, Greenland Maintenance (Greenland) had been retained to clear the snow and ice from the property pursuant to a contract. Abraham could not recall the terms of the contract with respect to frequency of the visits. Abraham had "no idea" how often he personally visited the property in March 2014, but testified that he currently "[h]ardly ever" visits the properties owned or managed by his companies.

¶ 18                              C. Bruce Spagnola Jr. Deposition

¶ 19         Also attached to the motion for summary judgment was a transcript from the discovery deposition of Bruce Spagnola Jr., Abraham's business partner and a principal in the two defendant LLCs. Spagnola testified that in March 2014, defendants used a computer software system to keep track of rent, tenant complaints, and other communications with tenants, but that there would be no way to retrieve that information because defendants no longer used those systems; defendants did not keep paper files to maintain copies of such records.

¶ 20         Spagnola testified that defendants retained Greenland to provide services to the subject property in March 2014 and that Miguel Hernandez was the proprietor of Greenland. Spagnola testified that Greenland was responsible for the removal of snow and ice from the property in March 2014 and that Greenland made the decision on whether there was a need for snow or ice removal "based on the amount of snowfall." Spagnola testified that there "were stipulations on the amount" of snow that would be required before Greenland needed to remove it, but could not recall the precise amount.

¶ 21         Spagnola estimated that he visited the subject property twice a month prior to March 2014 for purposes of "[c]hecking the general appearance, meeting maintenance staff who had questions," and "[m]aybe to pick up rent." Prior to March 5, 2014, he had never been made aware of any complaints concerning the exterior stairway of the property or the gutters and had never been made aware of any complaints of snow or ice overhanging the railings. Spagnola had never been physically present at the property when there were icicles hanging from the exterior handrails of the stairway and had never observed any issues concerning drainage or the roof. Spagnola was not aware of anything that he considered to be a hazardous condition during any of his visits to the property.

¶ 22 Spagnola testified that he was aware that plaintiff claimed to have slipped and fallen on March 5, 2014, but could not recall how he became aware of her claim. He did not conduct any investigation into plaintiff's allegations, did not take any photographs of the scene, and did not speak to Hernandez about his knowledge. Spagnola had no knowledge of the condition of the stairway on that date, did not recall the weather on that date, did not know the last time it had snowed prior to that date, and did not know whether there was ice or snow present on the exterior stairway on that date.

¶ 23          D. Miguel Hernandez Deposition

¶ 24 Finally, attached to the motion for summary judgment was the transcript of the discovery deposition of Miguel Hernandez, owner of Greenland. Hernandez testified that he performed lawnmowing and snow removal services for defendants and their properties and had done so in March 2014. With respect to clearing snow, Hernandez testified that when it snowed, he called defendants to determine if they wanted him to remove the snow; they did not have any written contract governing his services but only an oral agreement. He usually called after he observed over two inches of snowfall. Hernandez testified that defendants never contacted him to order him to remove snow; Hernandez always placed the phone call. Sometimes, defendants would approve the snow removal, while other times, they would instruct him not to remove the snow because " 'it's melting.' " When he called defendants, Hernandez spoke to Abraham.

¶ 25 Hernandez testified that he cleared snow from the subject property on March 2, 2014, and again on March 5, 2014, after plaintiff's fall; he had previously also been there in February. Hernandez testified that when he was at the property on March 2, he cleaned and salted the

walkways and stairs; he further testified that "[e]very time we clean the snow, we salt. That was the agreement."

¶ 26    Hernandez testified that when he was at the property, he never interacted with any of the tenants and he was not aware of any complaints that had been made concerning any snow or ice on the stairs. Hernandez became aware of plaintiff's fall when Genaro,[3] one of defendants' employees, called him and informed him that someone had fallen. Hernandez "went straight over there." Hernandez did not know Genaro's job title, but described him as "like a manager." Genaro asked Hernandez to come and clear the snow, which he did.

¶ 27    Hernandez testified that he also took several photographs of the scene on March 5 at Genaro's request, both before and after cleaning off the snow. Hernandez identified those photographs and testified that two of them, taken prior to cleaning off the snow, depicted icicles forming on the railings. Hernandez testified that he had observed icicles forming on the railings prior to March 5 and had spoken to Genaro by phone at least once or twice about those conditions. Hernandez could not recall the precise contents of the conversations but testified that "I told him about the ice accumulating back then." Hernandez testified that he observed the icicles on the railing on March 2 and informed Genaro about them on that date.

¶ 28    Hernandez testified that, prior to cleaning them, there was ice on the steps. Hernandez further testified that there was typically ice on the steps when he arrived to clean them. Hernandez testified that his understanding of the cause of the ice was that "the snow that accumulates on a roof, *** once it melts, it comes down, down the stairways, and it forms into ice." Hernandez testified that he had informed Genaro of these conditions prior to March

_____

[3]Hernandez did not testify as to Genaro's last name.

5. Hernandez also testified that, while he observed ice on the lower steps, he did not observe any ice on the top of the stairs.

¶ 29                                    III. Response to Motion for Summary Judgment

¶ 30        In response to the motion for summary judgment, plaintiff argued that she had alleged sufficient facts in her complaint to show that defendants owed her a duty to maintain a safe premises and that defendants had breached that duty. Attached to the response, in addition to plaintiff's and Hernandez's deposition transcripts, were several additional exhibits that appear to be photographs that depict the roof, railings, and stairs of the subject premises.

¶ 31                                    IV. Hearing and Trial Court Order

¶ 32        On October 25, 2017, the parties came before the trial court for a hearing on the motion for summary judgment. Both parties stood on their briefs, and only made brief arguments to the court, after which the court found that "there is no case law supporting the assertion that the mere presence of icicles on a gutter or on the handrails is evidence in and of itself that the *** gutters are faulty or defective in some way." The court found that while "there is plenty of evidence that ice accumulated on the bannister [*sic*] and on the stairs behind plaintiff's apartment," "there is no evidence that the gutters themselves were faulty or that this was an unnatural accumulation." The court found that "[p]laintiff fail[ed] to provide any evidence circumstantial or otherwise that the unidentified outside force is a condition caused by the defendant, and fail[ed] to establish any evidence that [defendants] had knowledge of any dangerous condition." Accordingly, the trial court granted summary judgment in defendants' favor.

¶ 33        Plaintiff's counsel asked whether the trial court was making a finding as to notice, and the trial court noted that "you don't even have to get to notice" because there was no

11

evidence beyond the existence of the icicles "to establish that necessary nexus" between the condition of the gutters and the cause of the icicles.

¶ 34      The trial court entered an order granting defendants' motion for summary judgment "for the reasons stated on the record" and entered judgment in favor of defendants and against plaintiff. The order provided that plaintiff's claims against Greenland and Hernandez remained active.

¶ 35      On November 20, 2017, plaintiff filed a motion to reconsider the grant of summary judgment, arguing that the trial court erred in its application of existing law. In its motion, plaintiff cited an unpublished appellate court order as support for the argument that icicles forming over a gutter were sufficient to raise a question of fact as to the existence of faulty gutter. Plaintiff also cited an unpublished appellate court order in support of her argument that the existence of constructive notice was a question of fact for the jury.

¶ 36      On February 22, 2018, the parties came before the trial court for a hearing on plaintiff's motion to reconsider. The parties did not engage in any arguments before the court, and the court found that "[t]o find defendant liable for plaintiff's injuries, the plaintiff must show that the ice was a result of an unnatural accumulation and defendant had notice. None of the notice arguments need even be addressed because there was no evidence of an [unnatural] accumulation." The court also noted that "plaintiff bases her entire argument on an unpublished case, so all of the arguments in that regard should be stricken." The court further noted that, even if that case was to be considered, it did not support her argument. Plaintiff's counsel then asked the court to consider a different case, but admitted that it had not been cited in the motion to reconsider. The court responded that it had "reviewed that which was submitted and that's what I'm basing my decision on." Plaintiff's counsel continued to

request that the court consider the noncited case, but the court denied the request. After the court was in recess and the trial judge had left the courtroom, plaintiff's counsel made its argument concerning the noncited case and other matters "for the record."

¶ 37     The trial court entered an order denying plaintiff's motion to reconsider "for reasons stated in open court." The trial court order further provided that "[p]laintiff's reading into the record of any additional arguments after the judge left the bench is stricken from the official transcript & court record over plaintiff's objection."

¶ 38     On February 26, 2018, plaintiff voluntarily dismissed her claims against Greenland and Hernandez without prejudice. On March 7, 2018, plaintiff filed a notice of appeal, and this appeal follows.

¶ 39                                    ANALYSIS

¶ 40     On appeal, plaintiff argues that the trial court erred in granting summary judgment in defendants' favor because there were questions of fact as to all elements of her negligence claim. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 41        "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 42        In the case at bar, plaintiff argues that there were questions of fact as to all elements of her negligence claim. "To recover on a negligence claim, the plaintiff must establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from that breach." *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001) (citing *Miller v. National Ass'n of Realtors*, 271 Ill. App. 3d 653, 656 (1994)). If the plaintiff cannot establish any element of her cause of action, summary judgment for the defendant is proper. *Pavlik*, 323 Ill. App. 3d at 1063 (citing *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989)).

¶ 43    "Property owners have a duty to exercise ordinary care in maintaining their property in a reasonably safe condition." *Nguyen v. Lam*, 2017 IL App (1st) 161272, ¶ 20. However, it has long been the rule that landowners are not liable for the failure to remove natural accumulations of ice and snow from their property. *Ziencina v. County of Cook*, 188 Ill. 2d 1, 11 (1999); *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010); *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 19. Despite this general rule, however, "landowners do owe a duty of reasonable care to prevent unnatural accumulations of ice and snow on their premises where they have actual or constructive knowledge of the dangerous condition." *Murphy-Hylton*, 2016 IL 120394, ¶ 20 (citing *Graham v. City of Chicago*, 346 Ill. 638, 643 (1931)). "Thus, liability may arise where snow or ice 'accumulated by artificial causes or in an unnatural way or by a defendant's own use of the area concerned and creation of the condition, and where it has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition.' " *Murphy-Hylton*, 2016 IL 120394, ¶ 20 (quoting *Fitzsimons v. National Tea Co.*, 29 Ill. App. 2d 306, 318 (1961)).

¶ 44    In the case at bar, plaintiff argues that the ice on which she slipped was caused by faulty gutters on the building's roof, which created an unnatural accumulation of ice on the steps. The trial court's grant of summary judgment rested primarily on the basis that plaintiff had not established that the gutters were faulty or that such faulty gutters were responsible for the ice on which plaintiff slipped. Thus, although we may affirm on any basis supported by the record, we consider that argument first.

¶ 45    Our supreme court has recognized that liability for a fall due to an unnatural accumulation of ice may be based on a defective condition or negligent maintenance of the

premises. *Murphy-Hylton*, 2016 IL 120394, ¶ 21. "Under the negligent maintenance cases, courts recognize that the construction and maintenance of landowners' premises are matters within their control." *Murphy-Hylton*, 2016 IL 120394, ¶ 21. Accordingly, "to hold them to a duty of reasonable care under these circumstances does not impose an undue burden on them not to 'add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises.' " *Murphy-Hylton*, 2016 IL 120394, ¶ 21 (quoting *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 711 (1999)). "A finding of an unnatural or aggravated natural condition must be based upon an identifiable cause of the water accumulation." *Branson v. R&L Investment, Inc.*, 196 Ill. App. 3d 1088, 1094 (1990). "Absent such a showing, summary judgment for the defendant is appropriate since the court owes no duty to reason some remote factual possibility." *Branson*, 196 Ill. App. 3d at 1095.

¶ 46    In the case at bar, we agree with the trial court that there was no evidence that faulty gutters caused an unnatural accumulation of ice, causing plaintiff's fall. First, the only "evidence" concerning the gutters was plaintiff's allegation in her complaint that the gutters were "faulty." The only factual basis for this allegation appears to be the fact that there were icicles hanging from the roof. Plaintiff presented no testimony or other evidence that the gutters were improperly installed or maintained, that there were code violations concerning the gutters, that icicles often formed on the gutters due to clogs or the manner in which they were constructed, or any other support for her allegation that the gutters were faulty. This distinguishes plaintiff's case from *Durkin v. Lewitz*, 3 Ill. App. 2d 481 (1954), a case on which she relies. See *Durkin*, 3 Ill. App. 2d at 483 (testimony that there were holes in the gutter which the witness observed water running through onto the landing). Plaintiff has

provided no authority for the proposition that the mere fact that there are icicles hanging from a gutter means that the gutters are faulty.

¶ 47    If plaintiff means that the gutters were faulty because icicles formed on the gutters, which caused the ice accumulation on the stair that plaintiff fell from, plaintiff failed to show by expert testimony or by any evidence that the icicles caused the ice that plaintiff slipped on, causing her injuries. "[I]n a slip-and-fall case, summary judgment for defendants is proper when plaintiff has no evidence regarding the cause of her fall." *Allen v. CAM Girls, LLC*, 2017 IL App (1st) 163340, ¶ 43. "[A]bsent positive and affirmative proof of causation, plaintiff cannot sustain the burden of establishing the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Allen*, 2017 IL App (1st) 163340, ¶ 43. Plaintiff testified that the ice was formed by the dripping icicles, but admitted that she did not know if the ice could have been formed by the naturally accumulating snow melting and refreezing. Hernandez also testified that his "understanding" was that ice formed on the railings due to melting snow from the roof, but he did not testify that he ever observed such water running onto the railings or steps; we must also note that Hernandez testified that he observed ice after plaintiff's fall only on the lower steps, not on the step on which plaintiff alleges she slipped. While plaintiff's allegations may have been sufficient to survive a motion to dismiss, something more than mere speculation is required to survive a motion for summary judgment. See *Sorce*, 309 Ill. App. 3d at 328 ("Mere speculation, conjecture, or guess is insufficient to withstand summary judgment.").

¶ 48    We are unpersuaded by plaintiff's attempt to draw an analogy between her case and that of *Lapidus v. Hahn*, 115 Ill. App. 3d 795 (1983). There, multiple witnesses testified that, for years, every time it rained or snowed, water dripped from the roof onto the platform in front

of the plaintiff's door, where it gathered in a puddle due to a depression on the platform. *Lapidus*, 115 Ill. App. 3d at 796. This occurred with such frequency that there was " 'corrosion' " on the platform caused by the constant puddles, which one could observe in the photographs in evidence. *Lapidus*, 115 Ill. App. 3d at 796. The plaintiff injured herself after slipping on ice created by this accumulation, and the jury returned a verdict in favor of the plaintiff, which was affirmed on appeal. In its analysis, the appellate court found that "[t]he jury considering the evidence in this case, including the fact that water repeatedly dripped in torrents from the roof onto the platform and was trapped there by the depression and that there was no ice or snow on the street or sidewalk, could reasonably have concluded that this ice was caused by the defective nature and construction of the roof and abetted by the depression in the platform and thus was not a natural accumulation." *Lapidus*, 115 Ill. App. 3d at 800-01.

¶ 49        In the case at bar, by contrast, plaintiff testified that she had not complained about icicles or ice forming on the steps prior to her fall, nor were any complaints made to defendants' agents or Hernandez, who was responsible for snow and ice removal. Thus, there was no pattern showing that the icicle formation in this case was a result of the gutters. Additionally, plaintiff testified that at the time of her fall, there was snow on the porch and on the steps. This is in contrast to *Lapidus*, in which the testimony was that only the area in which the plaintiff fell appeared to have ice at the time of her fall. *Lapidus*, 115 Ill. App. 3d at 798, 799. Since there was snow all around the area, plaintiff could not know whether the snow—which had naturally accumulated, melted, and refroze to form ice—or whether the ice was caused by icicles from the gutter. Accordingly, we find the instant situation distinguishable from *Lapidus*.

¶ 50    We are similarly unpersuaded by plaintiff's reliance on *Hornacek v. 5th Avenue Property Management*, 2011 IL App (1st) 103502. Plaintiff correctly notes that the *Hornacek* court found the plaintiff's allegations in that case sufficient to withstand a motion for summary judgment. However, that case involved the plowing of snow into large piles, which would melt to form " 'a big ice flow' " in the parking lot. *Hornacek*, 2011 IL App (1st) 103502, ¶ 32. The court itself noted that "[t]he fact that snow has been cleared and that there are piles of snow present suggests that the snow piles are an unnatural accumulation." *Hornacek*, 2011 IL App (1st) 103502, ¶ 26 (citing *Krywin*, 238 Ill. 2d at 231-32). Furthermore, there was a witness who testified that the snow piles would create the ice flow, which was present "pretty much all winter." *Hornacek*, 2011 IL App (1st) 103502, ¶ 35. Thus, again, this presents a situation in which the existence of the alleged unnatural accumulation of ice was apparent, in part, by a repeated occurrence, which provided an identifiable cause of the water accumulation. Here, by contrast, there was no such repeated occurrence—no witness testified, and no evidence was presented, that icicles regularly formed from the gutters and dripped onto the steps to freeze into ice. As a result, plaintiff failed to provide any evidence that the icicles caused the ice that plaintiff slipped on. Accordingly, we cannot find that the trial court erred in finding that plaintiff had not provided evidence that she slipped on an unnatural accumulation of ice based on faulty gutters, and we affirm the trial court's grant of summary judgment in defendants' favor. Since we have determined that the trial court properly granted summary judgment on this basis, we have no need to consider plaintiff's additional arguments concerning notice.

¶ 51    As a final matter, we find unpersuasive plaintiff's argument that the trial court abused its discretion in denying her motion to reconsider. "The purpose of a motion to reconsider is to

bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. "A ruling on a motion to reconsider is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). In the case at bar, plaintiff argues that the trial court erred in its application of existing law. As discussed above, we agree with the trial court's grant of summary judgment in defendants' favor and therefore find no basis to conclude that the trial court misapplied the law on that issue.

¶ 52                                    CONCLUSION

¶ 53        For the reasons set forth above, the trial court properly granted summary judgment in favor of defendants because plaintiff provided no evidence that her fall was caused by an unnatural accumulation of ice.

¶ 54        Affirmed.